No. 59,923

Adoria Boydston, As Executor of the Estate of Mercia Boydston, deceased; and Adoria Boydston, as lawful heir of Mercia Boydston; and Adoria Boydston and Maurice Wilson, *Appellants*, v. Board of Regents for the State of Kansas, *Appellee*.

(744 P.2d 806)

Opinion filed October 30, 1987.

*Michael L. Hodges*, of Overland Park, argued the cause was on the briefs for appellant.

*Janet M. Simpson*, of Holbrook, Ellis & Heaven, P.A., of Kansas City, Kansas, argued the cause, and *Thomas M. Sutherland*, of the same firm, was with her on the brief for appellee.

The opinion of the court was delivered by

Allegrucci, J.: This is a medical malpractice action brought by Adoria Boydston on behalf of her daughter, Mercia Boydston, and by Adoria Boydston and Maurice Wilson individually against the University of Kansas Medical Center (KUMC) through the Board of Regents for the State of Kansas; Glen P. Dewberry, M.D.; and Lynn E. Katterhenrich, R.N. Following

settlement by defendants Dewberry and Katterhenrich, the trial court granted the Board of Regents' motion to dismiss and the plaintiffs timely appeal.

The basic facts are not in dispute. On January 2, 1985, the plaintiffs filed this action against the Board of Regents, alleging, in part:

"4. That in October of 1983, Adoria Boydston became pregnant and consulted physicians at the University of Kansas Medical Center, College of Health Sciences and Hospital in Kansas City, Kansas, for medical care and treatment, including prenatal care and delivery of her child. Up to and including the time of her delivery on June 23, 1984, Adoria Boydston was accepted as a patient and was treated by various doctors employed by the University of Kansas Medical Center.

. . . .

"6. That during the course of plaintiff, Adoria Boydston's, pregnancy, employees of the defendants willfully, wantonly and carelessly refused to render care to the plaintiff, causing her physical and emotional harm. These acts by the defendants should entitle plaintiffs to punitive damages."

On March 6, 1985, in response to defendant Board of Regents' first set of interrogatories, plaintiffs set out their claim of negligence as follows:

"ANSWER:

"a) Nurses who attended the labor and delivery of MERCIA BOYDSTON. We believe their names to be Adair, Bain and Pearson;

. . . .

"*4(b) The nurses failed to respond timely to documented indications of fetal distress, thereby unduly delaying the emergency delivery of MERCIA BOYDSTON, thereby causing severe injury to said MERCIA BOYDSTON. Further, all agents or employees of this defendant who participated in the attempted, unauthorized spinal tap of MERCIA BOYDSTON in July 1984. Their names are known to this defendant, and will be developed during discovery, as well as the damages caused by said unauthorized, attempted spinal tap."

The plaintiffs amended their petition on July 18, 1985, by adding Dr. Glen P. Dewberry and Lynn E. Katterhenrich, R.N., as additional parties/defendants. The amended petition made specific allegations and incorporated by reference the allegations of negligence made in the original petition. On November 25, 1985, the plaintiffs filed a pretrial questionnaire which stated, in part:

"5. Theory of your claim, if any (including grounds of negligence, if applicable.):

. . . .

"C. As to defendant The Board of Regents for the State of Kansas, plaintiff claims:

"1. Imputed liability for negligent acts of defendant Katterhenrich and defendant Dewberry, based on theory of respondeat superior.

"2. This defendant was also negligent in that it did not have a board certified obstetrician and gynecologist on duty the night of June 23, 1984, and did not have an adequate nursing staff on duty the night of June 23, 1984, and had an inadequate number of doctors on duty the night of June 23, 1984, in the labor and delivery area.

"3. It did not have proper procedures to screen and monitor the experience, knowledge and skill of the nurses working in the OB/GYN department.

"4. It did not have continuing education program[s] to make sure that the nurses working in the OB/GYN department knew what they were doing, specifically, in regard to interpreting fetal monitor tracings.

"5. It negligently hired nurses to work in the OB/GYN department."

On June 27, 1986, the plaintiffs filed a second amended petition which reflected the death of the infant Mercia Boydston on May 21, 1986. Otherwise, the second amended petition reaffirmed the allegations of the plaintiffs' prior petitions. On the same day, the parties entered into a discovery scheduling agreement. Under the agreement, the attorney for the plaintiffs was to prepare a statement of his contentions before July 15, 1986, and submit it to the defendants, who would then incorporate the contentions into a proposed pretrial order.

In a letter dated July 10, 1986, the attorney for the plaintiffs wrote to the separate counsel for the Regents, Dewberry, and Katterhenrich concerning the contentions advanced by the plaintiffs. Under the heading "Basis of Liability," the letter denoted five paragraphs detailing the alleged negligence of Nurse Katterhenrich, and six paragraphs detailing the alleged negligence of Dr. Dewberry. There are no separate allegations of any negligent acts by the defendant Regents.

After receiving this letter, counsel for the Regents prepared a proposed pretrial order which was delivered to the plaintiffs. The proposed order stated, in part:

"C. As to the defendant the Board of Regents for the State of Kansas, the plaintiff claims the following acts of negligence:

"(1) Imputed liability for the negligent acts of defendant Katterhenrich based on the theory of respondeat superior.

"(2) The defendant Hospital failed to have a board certified obstetrician and gynecologist on duty the night of June 23, 1984, did not have an adequate nursing staff on duty the night of June 23, 1984, and had an inadequate number of doctors on duty the night of June 23, 1984 in the labor and delivery area.

"(3) The Hospital failed to have proper procedures to screen and monitor the

experience, knowledge and skill of the nurses working in the OB/GYN department.

"(4) The Hospital failed to have continuing education programs to make sure that the nurses working in the OB/GYN department knew how to interpret the fetal heart monitor tracings.

"(5) The Hospital negligently hired nurses to work in the OB/GYN department."

No pretrial conference was held in this case, nor was the proposed pretrial order filed with the court. Trial of the case was set to begin on Monday, August 4, 1986, and discovery continued up to the week of trial. On Friday, August 1, the separate attorneys for defendants Dewberry and Katterhenrich informed counsel for the Regents that the plaintiffs had settled with their clients. Under the terms of the settlement, the plaintiffs had settled all claims against Dewberry and Katterhenrich, and had released the Regents from "all claims that may arise as a result of the vicarious liability of Kansas University Medical Center for the alleged negligent acts of Glen Dewberry, M.D. and Lynn Katterhenrich, R.N."

At 4:00 p.m. the same day, counsel for the plaintiffs submitted to the Regents' attorneys a list of claims advanced by the plaintiffs. The list basically restated the plaintiffs' allegations of negligence against the Board of Regents as set out in plaintiffs' pretrial questionnaire.

The morning that trial was set to begin, counsel for the plaintiffs submitted "Updated Answers to Defendant's First Confirming Set of Interrogatories." The plaintiffs amended their answers to Interrogatory No. 4 by setting out the alleged acts of negligence committed by the defendant.

On the same day, the defendant filed motions to strike, for summary judgment, and to dismiss. The defendant contended that the plaintiffs were "attempting at this late minute to manufacture a cause of action against the hospital where none exists. This changes the whole complexion of this lawsuit should the court allow the plaintiffs to do this, and now necessitates a trial by ambush." The trial court agreed and found that the plaintiffs were changing the theory of their lawsuit to raise new claims against defendant and granted the motion to dismiss with prejudice.

The only question presented on appeal is whether the trial

court abused its discretion in granting defendant's motion to dismiss with prejudice. The plaintiffs advance numerous arguments to support their contention that the trial court erred. However, we believe that plaintiffs misinterpret the rationale for the trial court's decision and incorrectly frame the issues on appeal.

The plaintiffs argue that the court erred in dismissing the case for failure to comply with its orders, by treating the motion to dismiss as a summary judgment motion, and by holding that the release of one joint tortfeasor releases all joint tortfeasors. Although the motion to dismiss was framed in terms of the release of one joint tortfeasor releases all, the trial court dismissed on the basis of unfair surprise. The argument relating to summary judgment is not relevant since the trial court expressly stated it did not rule on the motion for summary judgment. Finally, the trial court did not find that, by releasing the doctor and the nurse as joint tortfeasors, the plaintiffs had also necessarily released defendant Board of Regents. Rather, the trial court held that the plaintiffs pled only claims of vicarious liability against defendant. Since the plaintiffs' settlement with Dewberry and Katterhenrich expressly released the defendant from any vicarious liability for the actions of Dewberry or Katterhenrich, the court found that the plaintiffs had released all of the claims they had pled against defendant, and that it would be unfair and prejudicial to the defendant to allow plaintiffs to proceed upon the theory of direct negligence.

Under the Kansas Code of Civil Procedure, there is no requirement that pleadings state facts sufficient to constitute a cause of action. *Oller v. Kincheloe's Inc.*, 235 Kan. 440, 448-49, 681 P.2d 630 (1984). Rather, the petition need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled. *Collier v. Operating Engineers Local Union No. 101*, 228 Kan. 52, 62, 612 P.2d 150 (1980). The short and plain statement of a claim is sufficient if it gives the defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Rinsley v. Frydman*, 221 Kan. 297, 302, 559 P.2d 334 (1977) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 [1957]).

As long as the opponent is apprised of the facts that entitle the plaintiff to relief, it is not necessary to spell out a legal theory of relief in the pleadings. *Oller*, 235 Kan. 440. Wright and Miller have addressed the same subject, and state:

"The real issue, of course, is not whether legal theories may be pleaded but whether the original theory may be discarded and recovery had on some other theory. The federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits. Undoubtedly cases can be imagined in which an alteration in legal theory would work to the prejudice of the opposing party in a way that cannot be rectified by an appropriate court order. But such cases are very rare and the court always can invoke its discretion under Rule 15 to prevent a change in the theory of the action. In the vast majority of cases, any temporary prejudice from a shift in theory can be overcome by permitting additional time for discovery or by granting a continuance if the case has reached trial." 5 Wright & Miller, Federal Practice and Procedure: Civil § 1219 (1969).

The statement of the law under Rule 8 of the Federal Rules of Civil Procedure (which is identical to K.S.A. 60-208) has been consistently cited with approval by the federal courts. See, *e.g.*, *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821 (6th Cir. 1983); *Mir v. Fosburg*, 646 F.2d 342 (9th Cir. 1980); *Thibodeau v. Foremost Ins. Co.*, 605 F. Supp. 653, 657 (N.D. Ind. 1985). In *Oller*, 235 Kan. at 447, this court stated:

"The spirit of our present rules of civil procedure permits a pleader to shift the theory of his case as the facts develop so long as he has fairly informed his opponent of the transaction or the aggregate of the operative facts involved in the litigation." (Citing *Griffith v. Stout Remodeling, Inc.*, 219 Kan. 408, Syl. ¶ 3, 548 P.2d 1238 [1976].)

The determination of whether a party's claim is a late shift in the thrust of the case which prejudices the opponent is left to the sound discretion of the trial court. *Mir v. Fosburg*, 646 F.2d at 347. Where such exercise of discretion is questioned on appeal, we must determine whether the opposing party was taken by surprise and, if so, whether it resulted in substantial prejudice to that party.

With these principles in mind, we turn to the trial court's determination in the present case. Was the defendant prejudiced by plaintiffs' shift in theory of liability? We think not. It is true that the original petition makes no allegation of direct negli-

gence on the part of defendant Regents but, rather, speaks of injuries which were caused by "various doctors employed" by KUMC. Similarly, the plaintiffs' Answers to Interrogatories filed March 6, 1985, contain allegations only of the negligence of medical personnel employed by KUMC. There is no allegation in the answers to interrogatories of any direct negligence on the part of defendant.

The plaintiffs did, however, prepare a pretrial questionnaire filed on November 25, 1985, which contained allegations of direct—as opposed to merely vicarious— liability on the part of defendant. As part of a discovery scheduling agreement in June 1986, the plaintiffs' attorney was to prepare a statement of contentions which would be incorporated into a pretrial order to be prepared by the defendant. The proposed pretrial order was prepared by counsel for the defendant and provided to the plaintiffs on or about July 21, 1986. The defendant was obviously aware of plaintiffs' contentions of direct negligence prior to July 21, 1986.

The defendant, in defending the trial court's ruling, argues that, since there was no pretrial conference or order, the pleadings contain only claims based on vicarious liability which were resolved by the settlement agreement and, therefore, no claims remained against the defendant on the day of trial. The defendant's argument ignores the basis of the trial court's decision. The plaintiffs' case was dismissed based upon the finding of unfair surprise that prejudiced the defendant's ability to defend the case on its merits, and was not dismissed based upon the pleadings. What was pled or not pled by the plaintiffs is not relevant in determining the issue before this court on appeal.

The unsettled and confused status of this case on the day of trial was due in large part to the failure to hold a pretrial conference and file a subsequent pretrial order. Counsel failed to agree on the proposed pretrial order prior to trial. Both counsel and the trial court must share the responsibility for the breakdown in the pretrial procedure and resulting confusion: counsel, for not requesting a pretrial conference or court intervention when the proposed pretrial order could not be agreed to; the trial court, in failing to hold a pretrial conference or in making sure that counsel submitted an agreed-to pretrial order within a rea-

sonable time prior to trial. The primary purposes of a pretrial conference are to reduce, if not eliminate, surprise from the trial and to determine exactly what issues are to be tried and what procedures are to be followed. In *Tillotson v. Abbott*, 205 Kan. 706, 709, 472 P.2d 240 (1970), this court stated:

"The pre-trial conference and the order entered thereon are an important part of the procedural process. They are provided to acquaint each party in advance of trial with the factual contentions of the opposite parties as to matters in dispute. *The opportunity for maneuver and surprise during the trial is reduced. As a result of the pre-trial conference all parties are better able to prepare their testimony on the issues to be tried.*" (Emphasis added.)

In all but the simplest cases, reason and common sense dictate that a pretrial conference be held within an appropriate time prior to trial, and a pretrial order be prepared and filed, as required by Supreme Court Rule 140 (235 Kan. cix).

Under the circumstances of this case, was the trial court justified in dismissing this case with prejudice? We think not. Whatever temporary prejudice defendant suffered from a shift in plaintiffs' theory of liability could have easily been cured by taking less severe action.

Dismissal with prejudice is a drastic and final action. It is akin to entering default judgment in its effect to the litigants and to the lawsuit. This court has stated on numerous occasions that default judgments are not favored in law and any doubt should be resolved in favor of action which allows the case to be decided on its merits. *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 523 P.2d 351 (1974); *Reliance Insurance Companies v. Thompson-Hayward Chemical Co.*, 214 Kan. 110, 519 P.2d 730 (1974). We pointed out in *Montez* that, while there is a need to achieve finality in litigation, judicial discretion must not accomplish that end in disregard of what is just, right, and equitable under the circumstances. The same applies equally to dismissing a case with prejudice to a party.

We are of the opinion that less drastic action would have been sufficient to overcome any temporary prejudice suffered by the defendant. The court could have, for example, determined if the proposed pretrial order was acceptable to counsel and, if not, then resolved the differences and rescheduled the case for trial or scheduled a pretrial conference and proceeded accordingly.

To deny the plaintiffs their day in court when other less severe action would have overcome the limited prejudice to the defendant was an abuse of discretion.

The judgment of the trial court is reversed and the case is remanded with directions to set aside the dismissal with prejudice and for further proceedings consistent with this opinion.

HOLMES and McFARLAND, JJ., concur in the result.