IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,768

JOHN DOE H.B., an Individual,
*Appellee*,

v.

M.J., Individually and in His Capacity as a Priest at St. Matthew Parish, and the ROMAN CATHOLIC ARCHDIOCESE OF KANSAS CITY, KANSAS, a Kansas Not For Profit Corporation,
*Appellants*.

SYLLABUS BY THE COURT

1.

Under the Kansas rules of civil procedure, a pleading requires only a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment.

2.

Notice pleading in Kansas does not require a plaintiff to state facts sufficient to constitute a cause of action. The rules require only a short and plain statement of a claim that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.

3.

Notice pleading requires liberal interpretation of the pleadings and relies on discovery to fill in gaps.

1

4.

K.S.A. 2020 Supp. 60-523 contains no requirement that a party against whom a claim for damages suffered as a result of childhood sexual abuse must have been the active perpetrator of the abuse. The statute applies broadly to claims against individuals and entities whose negligent or intentional conduct resulted in injuries to the plaintiff.

Review of the judgment of the Court of Appeals in 59 Kan. App. 2d 273, 482 P.3d 596 (2021). Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed April 22, 2022. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed, and the case is remanded.

*Chad E. Blomberg,* of Lathrop GPM LLP, of Kansas City, Missouri, and *Ross Henry Stewart*, of Stewart Law Office, LLC, of Overland Park, argued the cause, and *Mara H. Cohara,* of Lathrop GPM LLP, of Kansas City, Missouri, and *Elizabeth D. Hatting*, of the same firm, and *Carrie E. Josserand*, of the same firm, of Overland Park, were with them on the briefs for appellant.

*Rebecca M. Randles*, of Randles Mata LLC, of Kansas City, Missouri, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: The adult plaintiff alleges a priest sexually abused him when the plaintiff was a child and is suing the priest and the archdiocese that employed the priest for damages. The defendants sought interlocutory appeal from orders denying their motions for dismissal and summary judgment, and this court granted review of the Court of Appeals opinion affirming the district court. We find the Court of Appeals opinion to be well reasoned and agree with its conclusions.

The plaintiff John Doe H.B. (H.B) was born on April 30, 1971. He attended Catholic schools in Topeka, where he often served as an altar boy and was frequently in the company of a priest, Father M.J. H.B. later relocated to Guam, where he currently resides.

On August 31, 2017, H.B. filed a petition in Wyandotte County District Court seeking damages from M.J. and the Roman Catholic Archdiocese of Kansas City in Kansas. The petition alleged various torts based on sexual abuse by M.J. from the time H.B. "was approximately 9 years old until he was approximately 12 years old." These dates would have been between April 30, 1980, and April 29, 1984. The petition listed specific examples of sexual abuse and asserted that H.B. "repressed all memory of the abuse until approximately late fall 2015 when news reports of sexual abuse by priests . . . in Guam hit the media." The petition further asserted that H.B. "did not discover nor could he reasonably have discovered his injury until his memory returned."

The defendants filed motions to dismiss based on statutes of limitations and repose. The district court denied the motions to dismiss and ordered limited discovery relating to the limitation and repose statutes. The parties then agreed to a videotaped deposition of H.B., which took place on October 30, 2018.

The defendants filed motions for judgment on the pleadings or, in the alternative, for summary judgment, arguing the claims were time barred. The district court denied the defendants' motions. The district court filed an amended order certifying the case for interlocutory appeal under K.S.A. 60-2102(c), expressly finding that its judgment involved controlling questions of law to which there was substantial ground for difference of opinion and an immediate appeal might materially advance the ultimate

termination of the litigation. The defendants then filed a timely request for immediate appeal with the Court of Appeals.

The Court of Appeals affirmed the district court in *John Doe v. M.J.*, 59 Kan. App. 2d 273, 482 P.3d 596 (2021). This court granted the defendants' joint petition for review. Having reviewed the record, the parties' arguments, and the relevant statutes, we agree with the Court of Appeals analysis and affirm.

*The Statutes of Repose and Limitations*

The defendants urge this court to look to statutes of repose and limitations to conclude as a matter of law that the time has expired for H.B. to bring claims for damages against them. A statute of limitations establishes a maximum time from when an action accrues during which an injured party may file for recourse, and the action may accrue when the injuries manifest themselves. See *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986); *Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, 92, 490 P.2d 649 (1971). A statute of repose, on the other hand, establishes a maximum time to seek legal relief after a causative event has occurred, even if no discernible injury has yet manifested itself; it may create finality for meritorious suits even when the plaintiff is not responsible for the delay. See *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992); *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930 (7th Cir. 2011).

Before embarking on a review of the issues the defendants present, we note the posture of this case. It has not gone to trial, and full discovery has not taken place. The questions before us rest in the context of the pleadings, narrowly targeted depositions and interrogatories, and arguments by counsel. Further discovery or a full evidentiary

proceeding may resolve uncertainties in favor of one or the other sides to this litigation in a manner not possible now.

The defendants initially argue that the K.S.A. 60-515(a) eight-year statute of repose and the K.S.A. 2020 Supp. 60-523 statute of limitations operate together to extinguish H.B.'s claims. Resolution of this argument rests on whether H.B. is subject to the pre-July 1992 statute of repose or the post-July 1992 statute of repose. This test rests in turn on the extent to which H.B. is bound to factual assertions contained in his petition and on when the alleged abuse occurred for the last time—before July 1, 1984, or after July 1, 1984—as well as on the question of when H.B discovered he had injuries arising from his alleged childhood sexual abuse. The district court ruled these were factual questions that could not be resolved from the pleadings and it would therefore be inappropriate to dismiss the complaint based on the pleadings and limited discovery alone. The Court of Appeals agreed, and so do we.

We are reviewing here both motions to dismiss and motions for summary judgment. The main distinction between the handling of a motion to dismiss and a motion for summary judgment is that the former limits the trial court to a review of the pleadings, while the latter allows the trial court to consider all the facts produced during the discovery process—affidavits, depositions, admissions, and answers to interrogatories. *Keiswetter v. State*, 304 Kan. 362, 367-68, 373 P.3d 803 (2016).

An appellate court reviews the district court's denial of a motion for summary judgment de novo, viewing the facts in the light most favorable to the party opposing summary judgment. If reasonable minds could disagree about the conclusions to be drawn from the evidence—in other words, if there is a genuine issue about a material

fact—summary judgment is inappropriate. *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

K.S.A. 2020 Supp. 60-256(f) extends to the district court the discretion to deny a motion for summary judgment when discovery is needed. An appellate court's standard of review of such a decision is for abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013).

K.S.A. 60-515(a) is a statute of repose that sets out a general requirement that an action must be commenced no more than eight years after the date on which the events took place that gave rise to the cause of action:

> "Except as provided in K.S.A. 60-523, if any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, an incapacitated person or imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action."

For most tort claims, then, an injury suffered by a child at the age of, say 8, would no longer be actionable by the time the child turned 18. But K.S.A. 60-515(a) carves out an exception for K.S.A. 2020 Supp. 60-523 injuries resulting from sexual abuse.

K.S.A. 2020 Supp. 60-523 extends the limitation on actions to no more than three years from when the plaintiff discovered that injuries resulted from childhood sexual abuse:

> "(a) No action for recovery of damages suffered as a result of childhood sexual abuse shall be commenced more than three years after the date the person attains 18 years of age or more than three years from the date the person discovers or reasonably should have discovered that the injury or illness was caused by childhood sexual abuse, whichever occurs later."

This statute contains another time limitation—it applies only when the last act of abuse took place on or after July 1, 1984:

> "(d) This section shall be applicable to:
> (1) Any action commenced on or after July 1, 1992, including any action which would be barred by application of the period of limitation applicable prior to July 1, 1992;
> (2) any action commenced prior to July 1, 1992, and pending on July 1, 1992."

The most literal reading of the above language would indicate that *any* action—including the present one—would be saved by the statute, no matter when the abuse occurred, so long as it was filed within three years of the discovery of resulting injury or illness. Constitutional due process concerns, however, limit application of the statute to those claims that had not been extinguished by the eight-year statute of repose at the time K.S.A. 60-523 was enacted. See *Ripley v. Tolbert*, 260 Kan. 491, 500-512, 921 P.2d 1210 (1996); see also *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 669, 831 P.2d 958 (1992) (Legislature cannot revive legal claim barred by statute of repose because doing so would take defendant' vested property right without due process).

7

The statute liberally expands the time for filing by stating that the discovery of the "last act" suffices to bring all prior acts by the same perpetrator within the reach of the statute. K.S.A. 2020 Supp. 60-523(c). Thus, even if most of the alleged abuse took place before July 1, 1984, the cause of action would be preserved if a single act took place after that date.

The Court of Appeals explained the synthesis of the two statutes in this way:

"Unlike K.S.A. 60-515, K.S.A. 2019 Supp. 60-523 does not include an 8-year repose, or any repose, that extinguishes the claims to which it applies. But the extended limitations period in K.S.A. 2019 Supp. 60-523 only applies to claims that would not have been otherwise time-barred when that statute became effective on July 1, 1992. See K.S.A. 2019 Supp. 60-523(d). Practically speaking, this means that the longer limitation on abuse claims brought under K.S.A. 2019 Supp. 60-523 does not apply to offending acts that occurred before July 1, 1984, as those claims were extinguished as a matter of law under K.S.A. 60-515(a) before K.S.A. 2019 Supp. 60-523 became law." *Doe*, 59 Kan. App. 2d at 277.

The parties do not contest this conclusion. This leads to the first question that the defendants put before the courts:  Did the alleged abuse end before or after July 1, 1984? The following leads us to conclude that this is a disputed question of fact, not a matter appropriate for judgment on the pleadings or preliminary discovery.

The defendants urge this court to find that H.B. pleaded certain facts in his petition that, taken on their face, placed his cause of action outside the statutory time limitations. If M.J. sexually abused him from the time he was 9 until he was 12, the argument goes, and he turned 13 on April 30, 1984, then the abuse must have stopped before the

July 1, 1984, statutory deadline of K.S.A. 2020 Supp. 60-523(d). The petition also asserted that "[b]etween his fourth and seventh-grade years, Fr. M.J. sexually abused him on multiple occasions in multiple locations." The defendants argue that the seventh-grade year must have ended before July 1, 1984, from which it can be deduced that the abuse stopped before the 60-523(d) deadline.

H.B. responds that his petition was broad enough in its assertions of fact that it could include the time period after July 1, 1984. The petition was phrased in approximate time periods, alleging: "From the time Plaintiff was approximately 9 years old until he was approximately 12 years old, Fr. M.J. sexually abused him." H.B. also contends that the end of the seventh-grade year was not necessarily when classes stopped but could be understood to include the months following the completion of his classes.

In arguing to the district court, H.B.'s counsel acknowledged there were discrepancies in certain dates and it was not clear, without reviewing school records, exactly when H.B. was in the seventh grade or when the abuse began. The district court determined that the pleadings alone were insufficient to establish the relevant dates and ordered limited discovery relating to when the abuse occurred and when H.B. became aware of his injuries and their cause. The limited discovery suggests facts that could establish abuse continuing well beyond July 1, 1984.

In response to interrogatories, Archdiocese records indicate that M.J. was assigned to multiple locations throughout northeast Kansas during the relevant time in question. The records showed that M.J. was assigned to St. Matthew's in Topeka from summer 1981 to summer 1983, to St. Aloysius in Meriden from summer 1982 to summer 1983, to Holy Spirit in Overland Park as an associate pastor from summer 1983 to summer 1984, and to St. Peter's in Kansas City, Kansas, as an associate pastor from summer 1984 on.

9

He was also a regional chaplain in Wyandotte County from August 1984 on, a central interparish C.C.D. director in Wyandotte County from August 1985 on, and a regional family life director in Wyandotte County from December 1985 on. M.J. stated he could not remember details of his positions and time at the Archdiocese. His answers showed he was at Holy Spirit "from July 1983-1984," and at St. Peter's from 1984-1986. He could not remember whether he attended the funeral in Topeka of Jeffrey David Hassett, who died around May 5, 1985. He left the Archdiocese "to start my own life" around the summer of 1995.

H.B. served as an altar boy from the fourth grade to the eighth grade at St. Matthew's. H.B. testified at a deposition that his first sexual encounter with M.J. took place when H.B. was in the fourth grade and M.J. persuaded him to spend the night with him. Episodes of sexual abuse continued over the following years, initially on most weekends, when H.B. would stay at the rectory, and then less often when H.B. became involved in baseball and was less available to M.J. H.B. stated that he became seriously involved in baseball during his eighth-grade year, which would have been from 1984 to 1985. Even after M.J. was officially transferred to another city, he remained active in H.B.'s parish, and H.B. accompanied him on "numerous occasions" to M.J.'s outreach churches. He stated that he could not recall how many episodes happened between the initial abuse and the last incident.

H.B. testified he encountered M.J. in a parking lot at a funeral in May 1985, and M.J. tried to hold his hand and then reached over and touched his genitalia. According to H.B., M.J. was at the funeral to assist with communion. He said that the last incident before the funeral took place during the Christmas 1984 holidays, when he stayed overnight at the rectory.

The defendants contend that the factual assertions educed beyond the pleadings do not save H.B.'s case because he is bound by the dates and events he set out in his pleadings and assertions to the district court. They urge the appellate courts to construe H.B.'s pleadings narrowly, including technical understandings of when M.J. served as a parish priest at St. Matthew's. But even a strict reading of the petition shows that H.B. used the word "approximately" when stating how old he was when the abuse took place, and "approximately" does not mean "exactly." And this court will not read the petition in such a hyper-technical way as to require a showing that the Archdiocese assigned M.J. to be a priest in residence at St. Matthew's when he may have occasionally served in an official role at that parish while assigned to another parish. Such constructions of the pleadings dangerously undermine the principles of notice pleading.

With the advent of the rules of civil procedure, a pleading requires only a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment. See K.S.A. 2020 Supp. 60-208(a). "There is no requirement to state facts sufficient to constitute a cause of action. [Citation omitted.] All the rules require is a short and plain statement of a claim that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Rinsley v. Frydman*, 221 Kan. 297, 301-02, 559 P.2d 334 (1977). Notice pleading requires liberal interpretation of the pleadings and relies on discovery to fill in gaps. See *Montoy v. State*, 275 Kan. 145, 149, 62 P.3d 228 (2003). If, in the course of comprehensive discovery in the present case, it comes to light that there were violations of the statute of repose or the statute of limitations, the defendants will then have the option of requesting summary judgment.

The Court of Appeals looked at this issue in terms of notice pleading and held that the petition was sufficient to place the defendants on notice of the nature of the claims against them. Failure to allege the exact dates of the abuse and the discovery of the

injuries did not prejudice the defendants, and the approximations contained in the pleadings did not defeat the purposes of notice pleadings:

> "We do not find the defendants' efforts to confine H.B.'s allegations to the narrowest reading of his petition persuasive. Kansas continues to follow rules of notice pleading. Thus, a petition must be broadly construed to determine whether, when read in the light most favorable to the plaintiff, it states a cognizable claim for relief. See *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013); see also K.S.A. 2019 Supp. 60-212. A party's petition is not intended to govern the entire course of the case. *Rector*, 287 Kan. at 232; *Pioneer Ridge Nursing Facility Operations, L.L.C. v. Ermey*, 41 Kan. App. 2d 414, 418-19, 203 P.3d 4 (2009).

> "It is true that in some limited instances, a party's admissions in his or her petition may be binding on later proceedings—particularly when 'other parties to the action relied thereon and changed their position' because of them. *Arrowhead Const. Co. of Dodge City, Kansas, Inc. v. Essex Corp.*, 233 Kan. 241, Syl. ¶ 4, 662 P.2d 1195 (1983), *disapproved of on other grounds* by *Wichita Sheet Metal Supply, Inc. v. Dahlstrom and Ferrell Const. Co., Inc.*, 246 Kan. 557, 792 P.2d 1043 (1990). But no one has demonstrated this type of detrimental reliance here—either H.B.'s claim is timely and can proceed, or it is not.

> "Our Kansas Supreme Court has explained that allegations of fact included in a party's pleadings do not necessarily constitute judicial admissions when 'alternative and hypothetical forms of statement of claims and defenses, regardless of consistency . . . lack the essential character of an admission.' *Lytle v. Stearns*, 250 Kan. 783, 795-99, 830 P.2d 1197 (1992). The *Lytle* court observed that such allegations "'are directed primarily to giving notice and lack the essential character of an admission. To allow [such pleadings] to operate as admissions would render their use ineffective and frustrate their underlying purpose.'" 250 Kan. at 798-99 (quoting McCormick on Evidence § 265, 781-82)." *Doe*, 59 Kan. App. 2d at 292-93.

This reasoning is sound and requires no further elaboration.

The defendants also argue H.B. did not bring his claim within three years of reasonably discovering injuries caused by childhood abuse, a time limitation set out in K.S.A. 2020 Supp. 60-523(a). K.S.A. 60-523(c) defines "[d]iscovery that the injury or illness was caused by childhood sexual abuse" broadly to mean "not just awareness of the abuse, but an understanding that the sexual abuse caused the plaintiffs' injuries." *Shirley v. Reif*, 260 Kan. 514, 526, 920 P.2d 405 (1996).

During his deposition, H.B. stated he began to remember the sexual abuse when reports about similar cases began to surface in Guam. H.B. stated that he was in ongoing counseling and that he started to realize that the dates of the abuse contained in the original petition were not quite correct. He began to recall incidents, specifically the encounter at the funeral, that were more recent. According to the Archdiocese's records, H.B. called the Archdiocese in March 2015 to request information as he began to recover his memories.

The defendants characterize H.B.'s testimony as self-serving, but testimony that supports one's own position is not necessarily wrong or dishonest. The Court of Appeals explained:

> "The fact-finder in this case might eventually agree with the defendants' arguments regarding H.B.'s testimony. Or some other evidence might arise during discovery that would conclusively pinpoint when the abuse took place. But it is not the role of a court at summary judgment—nor our role on appeal—to make credibility assessments or weigh conflicting evidence. And here, there remains a factual dispute about when H.B. did in fact discover that his injuries were caused by childhood sexual abuse. . . .

13

"If the jury determines that H.B. discovered his injuries were caused by childhood sexual abuse after August 31, 2014, then his suit is timely under K.S.A. 2019 Supp. 60-523. But if the jury finds that H.B.'s reasonable discovery occurred before that date, his claims are barred as a matter of law. Regardless of the fact-finder's ultimate determination, the district court correctly denied the defendants' motions for summary judgment." *Doe*, 59 Kan. App. 2d at 296.

The Court of Appeals analysis of the factual issues is persuasive. The defendants seek to stop this action from proceeding by short-circuiting the fact-finding process at the pleadings stage. Disputed questions of material fact remain at this point in the proceedings, and judgment on the pleadings or summary judgment is inappropriate.

*Application of K.S.A. 2020 Supp. 60-523(a) to the Archdiocese*

The Archdiocese argues that the K.S.A. 2020 Supp. 60-253 special statute of limitations applies only to suits against individuals, not to suits against institutions, and that, even if the case is allowed to go forward against M.J., the action against the Archdiocese is time barred. The Court of Appeals disagreed, and we agree with the Court of Appeals.

Statutory interpretation presents a question of law over which appellate courts exercise unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words

their ordinary meanings. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

The Archdiocese contends that the wording of K.S.A. 2020 Supp. 60-523 demonstrates the Legislature intended the savings clause to operate only against individual defendants who perpetrate crimes, not against institutional defendants or other non-perpetrators. The Archdiocese points to K.S.A. 2020 Supp. 60-523(b), which defines childhood sexual abuse in terms of criminal conduct, and the Archdiocese would have the courts conclude that, because the institution could not engage in the specified crimes, suits against institutions do not receive the benefit of the extended statutes of limitations and repose.

K.S.A. 2020 Supp. 60-523(b)(2) reads:

"'Childhood sexual abuse' includes any act committed against the person which act occurred when the person was under the age of 18 years and which act would have been a violation of any of the following:

"(A) Indecent liberties with a child as defined in K.S.A. 21-3503, prior to its repeal, or subsection (a) of K.S.A. 21-5506, and amendments thereto; (B) aggravated indecent liberties with a child as defined in K.S.A. 21-3504, prior to its repeal, or subsection (b) of K.S.A. 21-5506, and amendments thereto; (C) aggravated criminal sodomy as defined in K.S.A. 21-3506, prior to its repeal, or subsection (b) of K.S.A. 21-5504, and amendments thereto; (D) enticement of a child as defined in K.S.A. 21-3509, prior to its repeal; (E) indecent solicitation of a child as defined in K.S.A. 21-3510, prior to its repeal, or subsection (a) of K.S.A. 21-5508, and amendments thereto; (F) aggravated indecent solicitation of a child as defined in K.S.A. 21-3511, prior to its repeal, or subsection (b) of K.S.A. 21-5508, and amendments thereto; (G) sexual exploitation of a child as

15

defined in K.S.A. 21-3516, prior to its repeal, or K.S.A. 21-5510, and amendments thereto; or (H) aggravated incest as defined in K.S.A. 21-3603, prior to its repeal, or subsection (b) of K.S.A. 21-5604, and amendments thereto; or any prior laws of this state of similar effect at the time the act was committed."

To be sure, an entity such as the Archdiocese would not be capable of sodomizing or soliciting a child, at least not in its institutional capacity. The Archdiocese could not be convicted and sentenced to prison for those crimes. But the statutory language does not speak to a particular perpetrator of the criminal acts; it addresses "damages suffered as a result of childhood sexual abuse." K.S.A. 2020 Supp. 60-523(a). The focus is on the victim, not on which particular party engaged in the prohibited conduct.

Kansas tort law does not require that a defendant be the immediate and active cause of injuries. See, e.g., *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 331, 961 P.2d 1213 (1998) (liability for negligent supervision, hiring, and retention of employee); *Bright v. Cargill, Inc.*, 251 Kan. 387, 837 P.2d 348 (1992) (explaining basis for vicarious liability); *York v. InTrust Bank, N.A.*, 265 Kan. 271, 297-98, 962 P.2d 405 (1998) (recognizing tort liability for "passive tortfeasors"); *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 811 P.2d 1220 (1991) (recognizing tort liability for aiding and abetting in the commission of a tort).

Nothing in the plain language of K.S.A. 2020 Supp. 60-523 suggests the Legislature intended to make torts based on childhood sexual abuse different from other torts by creating a requirement of active perpetration of the abuse. To the contrary, the statute speaks of resulting harms, not of perpetrator liability.

16

The Legislature could have explicitly exempted vicarious and passive actors from the reach of K.S.A. 2020 Supp. 60-523, creating an exception for the general rules of tort liability. It did not do so. The Court of Appeals explained:

"The Kansas Legislature has defined limitations periods in multiple ways. At times, the legislature has assigned statutory timelines to specific tort claims. See, e.g., K.S.A. 60-513(a)(1) ('action[s] for trespass'); K.S.A. 60-513(a)(5) ('action[s] for wrongful death'); K.S.A. 60-514(a) ('action[s] for libel or slander'); K.S.A. 60-514(b) ('action[s] for assault, battery, malicious prosecution, or false imprisonment'). Other statutes apply time limitations to categories of claims, such as claims arising under contracts or statutes. See K.S.A. 60-511(1); K.S.A. 60-512. And sometimes, the legislature has chosen to apply a time limitation to particular plaintiffs (such as minors, incapacitated persons, or people asserting claims against an estate), regardless of the claims they assert. See K.S.A. 60-515; K.S.A. 59-2239.

"K.S.A. 2019 Supp. 60-523 does not fall into any of these categories. Most notably, the legislature could have tied the limitations period in that statute to 'actions for childhood sexual abuse,' as it did for other tort actions, but it did not. Instead, the statute's timeline applies to 'action[s] *for recovery of damages suffered as a result of* childhood sexual abuse.' (Emphasis added.) K.S.A. 2019 Supp. 60-523(a)." *Doe*, 59 Kan. App. 2d at 287-88.

The parties urge us to turn to the interpretation of similar statutes in other states. We decline to do so. It is the plain language of our statute, not the more-or-less similar language of other states' statutes that governs. We will note only that states that have language most akin to the Kansas text have come to the same conclusion: Their legislatures did not intend to limit the provisions of expanded limitations statutes to causes of action against only the actual perpetrators of sexual abuse. See, e.g., *Doe v. Boy Scouts of America Corporation*, 323 Conn. 303, 147 A.3d 104 (2016); *Werre v. David*,

17

275 Mont. 376, 913 P.2d 625 (1996); *Stephanie M. v. Coptic Orthodox Patriarchate Diocese of Southern U.S.*, 362 S.W.3d 656 (Tex. App. 2011); *C.J.C. v. Corporation of Catholic Bishop of Yakima*, 138 Wash. 2d 699, 985 P.2d 262 (1999).

We agree with the Court of Appeals analysis distinguishing statutes in states that have perpetrator-based language and states such as Kansas that have harm-based language. *Doe*, 59 Kan. App. 2d at 289-90. We also agree with that court's conclusion:

> "[O]nly individuals, not institutions, can engage in the acts listed as childhood sexual abuse in K.S.A. 2019 Supp. 60-523(b). But K.S.A. 2019 Supp. 60-523 applies broadly to any action for damages, so long as those damages flow from—were 'suffered as a result of '—childhood sexual abuse. This includes negligence claims against an institution for injuries that result from those abusive acts." 59 Kan. App. 2d at 290.

The bottom line is that a Kansas statute is in play in this appeal, and the plain language of that Kansas statute is that an action for damages suffered as a result of childhood sexual abuse may not be filed more than three years after the date when the person discovers that he or she has an injury caused by childhood sexual abuse. That language does not limit the pool of potential defendants subject to the expanded limitations period of K.S.A. 2020 Supp. 60-523.

The judgment of the Court of Appeals is affirmed. The judgment of the district court is affirmed. The case is remanded to the district court for further proceedings consistent with this opinion.

\* \* \*

STEGALL, J., concurring:  I write separately to note my disagreement with the majority's conclusion that by its plain language, K.S.A. 2020 Supp. 60-523 "contains no requirement that a party against whom a claim for damages suffered as a result of childhood sexual abuse must have been the active perpetrator of the abuse." *John Doe v. M.J.*, 315 Kan. ___, Syl. ¶ 4, ___ P.3d ___ (2022). In my view, the statutory language is ambiguous on this point. But it is unnecessary for us to resolve that ambiguity in this case. This is because H.B. alleged that the Roman Catholic Archdiocese of Kansas City was in fact an active perpetrator in the abuse under an aiding and abetting theory.

H.B.'s complaint asserts that the "Archdiocese aided and abetted" M.J.'s abusive conduct. According to the complaint, the Archdiocese encouraged and ratified M.J.'s abusive conduct by accepting his services—including his services for and contact with children, which the Archdiocese encouraged—without repudiation or investigation into the acts of sexual misconduct. As such, our decision to affirm the district court stands independent of the majority's conclusion that K.S.A. 2020 Supp. 60-523 "applies broadly" to cover individuals and entities who were not perpetrators of abuse.

I join the remainder of today's opinion and concur in judgment.

LUCKERT, C.J., joins the foregoing concurrence.