## COUNTY OF MOULTRIE *v.* FAIRFIELD.

1. The charter of the Decatur, Sullivan, and Mattoon Railroad Company, which took effect March 26, 1869, authorized the board of supervisors of the county of Moultrie, Illinois, to subscribe to the capital stock of that company to an amount not exceeding $80,000, and also, should it be sanctioned by a popular vote, to make a donation in aid of the company, and in each case to issue the requisite amount of county bonds.

2. Where, before the adoption of the Constitution of Illinois of 1870, a donation in aid of a railroad company had, pursuant to law, been voted by a county, bonds to pay that donation might be thereafter issued.

3. That vote cannot be held for naught, although in the notice of, and the petition for, the election at which it was cast the company is misnamed, if it sufficiently appears that the company was meant.

4. In this case the power to levy a tax was conferred, the company performed all the conditions which, by the vote cast Nov. 2, 1869, entitled it to receive the donation bonds, and they were delivered Nov. 1, 1871, reciting the law authorizing their issue. *Held*, that, in a suit by a *bona fide* holder of the coupons cut therefrom, a recovery cannot be defeated upon the ground that, in order to pay the principal and interest and the county expenses, the assessment must exceed the limitation imposed by sect. 8, art. 9, of the Constitution of 1870.

5. *Quære*, Is there any limit upon the power of taxation to raise means to meet the indebtedness of which the bonds in question are the evidence.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

This action was brought by Fairfield against the county of Moultrie, upon the common counts, for money lent, money had

and received, and money due on account stated, with notice that he would give in evidence coupons detached from certain bonds of the county issued in satisfaction of its respective donations in aid of the Bloomington and Ohio River Railroad Company, and the Decatur, Sullivan, and Mattoon Railroad Company. Plea, *non assumpsit*, under which, by agreement, the county was allowed to offer any evidence and make any defence that would be competent under any special plea well pleaded. The parties submitted the issues of fact as well as of law to the court; and a special finding of facts was made, upon which judgment in his favor was rendered, to reverse which the county brought this writ of error. The material facts are set forth in the opinion of this court.

Mr. *John R. Eden* for the plaintiff in error.

Mr. *Shelby M. Cullom* and Mr. *E. S. Bailey* for the defendant in error.

MR. JUSTICE WOODS delivered the opinion of the court.

We shall first consider the objections raised by the plaintiff in error to the recovery upon the bonds of the county of Moultrie issued to the Decatur, Sullivan, and Mattoon Railroad Company. The charter of this company took effect March 26, 1869. The ninth section provides as follows: " The several incorporated towns, cities, counties, and towns organized under the township organization law, along or near the route of said road, or that are in any way interested therein, may, in their corporate capacities, subscribe to the stock of said company or make donations thereto to aid in constructing or equipping said railroad." Then follows a proviso making subscriptions to the stock and donations conditional upon a vote of the people and prescribing the mode of holding elections, &c.

Section 10 declares: " The board of supervisors of Moultrie County are hereby authorized to subscribe to the capital stock of said company to an amount not exceeding eighty thousand dollars, and to issue the bonds of the county therefor, bearing interest at a rate not exceeding ten per cent per annum, said bonds to be issued in such denominations and to mature at such time as said board of supervisors may determine: *Pro-*

*vided*, that the same shall not be issued until said road shall be opened for traffic between the city of Decatur and the town of Sullivan aforesaid."

It appears from the records of the board of supervisors, as stated in the findings of the court, that on Nov. 2, 1869, an election was held according to law in the county, at which a majority of the votes cast was in favor of a proposition to donate to the company the sum of $75,000, to be paid in the bonds of the county when the road should be completed and in running order through it; and that, in pursuance of the vote, the board, Dec. 19, 1869, passed an order that there be donated by the county to the company the sum of $75,000, and that when the road should be completed through the county there be issued and delivered to the company the bonds to that amount payable in ten years, in satisfaction of such donation; and that on Nov. 1, 1871, the chairman of the board of supervisors and the clerk of the county issued and delivered to the company seventy-five bonds of $1,000 each in satisfaction of the donation. These bonds recite on their face that they are " issued by said county of Moultrie by virtue of a vote of a majority of the legal voters of said county voting at an election held in said county of Moultrie on the second day of November, 1869, which election was authorized by, and conditioned according to the provisions of, an act of the General Assembly of the State of Illinois, approved March 26, 1869, entitled an act to incorporate the Decatur, Sullivan, and Mattoon Railroad Company."

The court further found that Fairfield was a *bona fide* purchaser for value before maturity of the bonds issued to the company, from which the coupons offered in evidence were detached.

The facts above stated as found by the court, and the authority conferred by the charter of the company to issue the bonds, establish *prima facie* their validity and the right of Fairfield to recover.

The county insists, however, that there are other facts set forth in the findings which show the invalidity of the bonds. These are that, at the December special term, 1869, of the board of supervisors of Moultrie County, an order was passed

that the county subscribe to the capital stock of the company, by authority of sect. 10 of its charter, above recited, the sum of $80,000; that said subscription was then and there made; and that on Dec. 31, 1872, the road being then open for traffic between Decatur and Sullivan, the bonds of the county were issued and delivered to the company in payment of its subscription of stock.

The contention of counsel for the county is that the board of supervisors having, in December, 1869, subscribed to the capital stock of the company the sum of $80,000, by authority of sect. 10 of the charter of the company, it had given all the aid to the railroad company which the law authorized. In other words, it is insisted that the county could not subscribe the full amount of stock authorized by sect. 10, and also make a donation under sect. 9 ; that it could only do one of these two things. The inference which is drawn from this position is that the bonds issued in satisfaction of the donation, voted for by the people of the county and subscribed by the board of supervisors, were issued without authority, and are, therefore, void.

We cannot, for several reasons, concur in his views. *First*, it is conceded that the board could either subscribe any sum not exceeding $80,000 to the stock of the company, under sect. 10 of its charter, and issue the bonds of the county in payment thereof, or it could make a donation, under sect. 9 of the charter, of any amount which had been voted for by the voters of the county, and issue the bonds of the county in satisfaction thereof. As the county sets up as matter of defence against the donation bonds issued to the company, the fact that a subscription of stock had also been made, in payment of which the county had issued its bonds, it stands it in hand to show that the obligation of the county to issue bonds in payment of its subscription antedated its obligation to issue bonds to satisfy its donation. This the findings fail to show. They do not show which was first voted by the board, the donation or the subscription. They do show, however, that before any action was taken by the board in reference to either, to wit, on Nov. 2, 1869, the electors of the county had voted in favor of the donation. They further show that the county agreed to issue its

bonds in satisfaction of its donation when the company had completed its road through the county, and to issue its bonds in payment of its stock when the railroad should be open for traffic between the city of Decatur and the town of Sullivan; that the road was completed through the county as early as Oct. 20, 1871, and that the donation bonds were issued and bore date Nov. 1, 1871; that the road was not open for traffic between Decatur and Sullivan until Dec. 31, 1872; and that on that day, fourteen months after the issue of the donation bonds, the subscription bonds were executed and issued. If either class of bonds, therefore, has any advantage over the other on the question of authority for their issue, it would seem to be the donation bonds. *Secondly*, as there was authority for the issue of the donation bonds, which is recited on their face by reference to the law from which it was derived, the purchaser before maturity was not bound to look further. The county having authority to issue bonds like those purchased by him, he was under no obligation to inquire whether the county had issued more bonds than the law authorized. *Lynde* v. *The County*, 16 Wall. 6; *City of Lexington* v. *Butler*, 14 id. 282; *Marcy* v. *Township of Oswego*, 92 U. S. 637; *Humboldt Township* v. *Long*, id. 642. *Thirdly*, we are clearly of opinion that under sect. 10 of the charter of the company the county might subscribe for stock to an amount not exceeding $80,000, and issue its bonds in payment thereof, and under sect. 9 of the same charter make a donation to the same company, and issue its bonds in satisfaction thereof.

It is clear, and it is conceded in the brief of plaintiff in error, that the county is included within the terms of sect. 9, which applies to counties along or near the route of the road, or that are in any way interested therein. It is also clear that, independently of the provisions of sect. 10, the county might, upon a vote of the people authorizing it, make a donation of any amount to the company.

Section 10, which authorizes a subscription to the stock within certain limits, and without any vote of the people, does not preclude a donation under sect. 9. The obvious construction of the two sections, taken together, is that any county along

the line of the railroad, upon a vote of the people, may, without limit, either subscribe to the stock of the company or make it a donation to be paid for in bonds, and that the county of Moultrie may subscribe to the stock of the company, without a consenting vote of the people, any sum not exceeding $80,000. We must give this construction to the two sections if we allow both to have their full effect; and, if possible, they should be so construed as to give full effect to both, without any limitation or condition not incorporated in them by the legislature. The authority granted to Moultrie and other counties by sect. 9 to make donations is not restrained or repealed because authority is granted to Moultrie County, by another section and upon different conditions, to subscribe stock. One section is not inconsistent with the other, and therefore does not repeal it.

The next reason upon which the invalidity of the bonds and coupons under consideration is based, is the section of the Constitution of Illinois of 1870, which declares: "No county, city, town, or township, or other municipality, shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation: *Provided, however,* that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions, when the same have been authorized under existing laws, by a vote of the people of such municipalities under existing laws." First additional section.

The proviso of this section has been construed by the Supreme Court of Illinois — and this court has followed that construction — to extend to donations as well as subscriptions of stock. *Chicago & Iowa Railroad Co.* v. *Pinckney,* 74 Ill. 277.; *Middleport* v. *Ætna Life Insurance Co.,* 82 id. 562; *Lippincott* v. *Town of Pana,* 92 id. 24; *Fairfield* v. *County of Gallatin,* 100 U. S. 47.

According to the findings of the court below, the records of the board of supervisors of the county of Moultrie show that before the adoption of the Constitution of 1870 an election was held whereby the donation was authorized, which the bonds in suit were issued to satisfy, and we have already seen that

such election was authorized by sect. 9 of the charter of the railroad company. The prohibition of the Constitution does not, therefore, extend to the donation made in this case, or the bonds issued in satisfaction thereof.

An attempt is, however, made by the plaintiff in error to show that no election by which said donation was authorized was ever held ; because in the petition for the election, and in the notice of the election, the railroad company to which the donation was to be made was designated as the Mattoon, Sullivan, and Decatur Railroad Company, and not by its true name, to wit, the Decatur, Sullivan, and Mattoon Railroad Company. And the contention is that as there was no vote of the people which authorized the donation in question to the Decatur, Sullivan, and Mattoon Railroad Company, the power of the county to make the donation was cut off by the Constitution of 1870.

There can be no doubt to what company the people intended to make their donation. The statute-books of the State of Illinois will be searched in vain to find an act incorporating a railroad company by the name of the Mattoon, Sullivan, and Decatur Railroad Company. There can be no question that in the petition for, and the notice of, the election, the company intended was that known and chartered as the Decatur, Sullivan, and Mattoon Railroad Company; for the petition and notice designated the route upon which the road was to be built, and afterwards was built, and they refer to the provision of the charter of that company, which authorized the donation upon the making of which the voters were to express their will.

But a conclusive circumstance against the county to show to what company the donation was voted, is found in the records of the board of supervisors, set out in the findings of the court, in which it is distinctly stated that the petition for the election requested that an election be held in pursuance of an act entitled an act to incorporate the " Decatur, Sullivan, and Mattoon Railroad Company," to decide whether a donation of $75,000 should be made to that company, and that such election was held on Nov. 2, 1869, and resulted in favor of donating the sum of $75,000 to that company. It was

therefore ordered that said sum be donated to the Decatur, Sullivan, and Mattoon Railroad Company, and when said company should have completed its road through the county, that the bonds of the county should be delivered to it in satisfaction of such donation.

These records show what the understanding of the representative body of the county was in respect to the company to which the donation was voted. There can, therefore, be no doubt about the identity of the company which the voters of the county had in view when the election was held. It is certain that on Nov. 2, 1869, an election was held by the voters, and a donation of $75,000 voted to some railroad company. The circumstances to which we have adverted do not leave the least doubt that it was the Decatur, Sullivan, and Mattoon Railroad Company. Upon such a state of facts the law is well settled.

Even a contract is not avoided by misnaming the corporation with which it is made. *Hoboken Building Association* v. *Martin*, 2 Beas. (N. J.) 427. And if a corporation is misnamed in a statute, the statute is not thereby rendered inoperative if there is enough from which to ascertain what corporation is meant. *Chancellor of Oxford's Case*, 10 Rep. 53.

"Although the names of corporations are not merely arbitrary sounds, yet if there be enough to show that there is such an artificial being, and to distinguish it from all others, the body politick is well named, though the words and syllables are varied from." Bacon's Abr., tit. Corporation, C. 2. And it has been held by the Supreme Court of Illinois that the transposition of words comprising the name of a corporation is unimportant, if it be evident what corporation is intended. *Chadsey* v. *McCreery*, 27 Ill. 253.

We are, therefore, of opinion that in the petition for and notice of the election the transposition of two of the words of which the name of the corporation to which the aid was to be voted was in part composed, cannot render the election invalid and void.

It is, therefore, clear that the donation voted for at that election is taken out of the operation of that clause of the Constitution of the State which declares that no municipality shall

make donations to, or loan its credit in aid of, any railroad or private corporation. In our opinion none of the objections which we have noticed, to the validity of the bonds under consideration, are well taken.

The remaining objection to their validity is also urged against a recovery on those issued to the Bloomington and Ohio River Railroad Company, and is the only ground of defence against the last-named bonds. This objection we shall now consider. It is based on sect. 8 of art. 9 of the Constitution of Illinois, which declares: " County authorities shall never assess taxes, the aggregates of which shall exceed seventy-five cents per one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of this Constitution, unless authorized by a vote of the people of the county."

To show the applicability of this provision to the question in hand, the plaintiff in error offered evidence in the court below, on which the court made the following findings : —

" That at the time of the issuing of said bonds the indebtedness of said county, including said bonds, was two hundred and seventy-five thousand dollars, and the valuation of the taxable property of said county was two million two hundred and seventy-nine thousand and eighty-four dollars, and that the sum of ten thousand dollars per annum was required to defray the necessary ordinary expenses of said county ; and that at the time of the rendition of the judgment in this cause the indebtedness of the county, including accrued interest, was three hundred and seventy-five thousand dollars, and the valuation of the taxable property therein was three million five hundred and eighty-nine thousand two hundred and fifty-one dollars, and that it required twelve thousand dollars per annum to defray the necessary ordinary expenses of said county.

" That to enable said county to pay the indebtedness created by said donations to said Bloomington and Ohio River Railroad Company, and to said Decatur, Sullivan, and Mattoon Railroad Company, evidenced by said bonds still outstanding, the interest coupons upon which were sued on and offered in evidence in this case, will require the annual assessment of taxes, which

will exceed 75 cts. per $100 valuation of the taxable property in said county of Moultrie."

The argument of the plaintiff in error is that the indebtedness evidenced by the bonds issued by the county of Moultrie, in aid of the two railroads mentioned, does not fall within the exception found in sect. 8 of art. 9 of the Constitution, and that the above-recited findings of the court below show that the authorized tax of seventy-five cents on the one hundred dollars would not be sufficient to pay the expenses of the county and the principal and interest on the bonds. And it is, therefore, contended that the bonds are void.

The authority cited to sustain this position (*Loan Association v. Topeka*, 20 Wall. 655) merely decides that the bonds are void where there is no power in the legislature to authorize a tax in aid of the purpose for which they were issued.

But here it is conceded that there is power, within certain limits, to levy a tax to pay these bonds. They cannot, therefore, be void. *Marcy* v. *Township of Oswego, supra.*

Moreover, it appears from the findings of the court that at the time the bonds in question were issued a levy of seventy-five cents on every hundred dollars valuation of the taxable property of the county would produce a sum sufficient to pay the ordinary expenses of the county, and leave a surplus of over $7,000 to be applied to the payment of the bonds, and that at the commencement of this suit such annual surplus, by reason of the increase in the taxable property of the county, would amount to nearly $15,000, — a sum almost sufficient to pay the judgment rendered in this case. So that the defence now under consideration is reduced to this, that because the whole judgment cannot be at once collected, there should be no judgment at all.

But it nowhere appears in the record that the county has not ample means out of which the judgment could be collected besides its revenues derived from taxation. We know from the record that the county at one time owned $80,000 of the stock of the Decatur, Sullivan, and Mattoon Railroad Company, and it does not appear that it is not still the owner of this stock, and that it may not now be subjected to the payment of the judgment recovered in this case, or that the

county may not have other similar assets sufficient to pay all its debts.

Therefore, even if the county, by reason of the limit on its taxing power, could not levy a tax to pay these bonds, nevertheless, they having been authorized, the holder is entitled to judgment on them, and to collect it out of any property of the county which could be subjected to the payment of its debts.

Whether the indebtedness evidenced by the bonds which are the basis of this suit falls within the exception of sect. 8, art. 9, of the Constitution of Illinois, so that taxation for their payment is without limit, is a question which does not necessarily arise upon this record, and which we are not now required to decide.

We are of opinion that there is no valid defence against a recovery on the coupons sued on. The people of the county almost unanimously voted for the issue of the bonds. The conditions upon which the donations were made were fully performed. The railroads which they were intended to aid were completed and in use before they were executed, and they were regularly and honestly issued by the public officers charged with that duty. They are in the hands of *bona fide* holders for value. Common honesty demands that the county should apply its available means to their payment, and there is no obstacle to a recovery upon the coupons.

*Judgment affirmed.*