## HAAG v. BOARD OF COUNTY COM'RS.

*(Circuit Court, D. Colorado. April 13, 1888.)*

TURNPIKES AND TOLL-ROADS—COUNTY AID—BONDS—MISNOMER OF COMPANY—
ESTOPPEL.
 Under act Colo. Jan. 10, 1868, §§ 52, 53, (Rev. St. c. 18,) requiring the approval of the voters to the issuance of county bonds to aid in the construction of wagon roads, where the voters approve the issuance of such bonds in the name of the Del Norte & Summit Wagon Road Company, and the county thereupon issues and registers bonds, but in the name of the Del Norte & Summit-Wagon Toll-Road Company, the companies being one, and the bonds reciting that the voters have approved their issue in the latter name, and where the county pays the interest regularly, and assumes the management of the completed road, the bonds are valid in the hands of a *bona fide* purchaser notwithstanding the misnomer.

At Law. Action on county bonds.

The plaintiff, Joseph Haag, brings this action on bonds issued by the board of county commissioners of Rio Grande county, Colo., to aid in the construction of a wagon road.

*Rogers & Cuthbert*, for plaintiff.

*R. D. Thompson* and *E. F. Richardson*, for defendants.

BREWER, J. This is an action on county bonds, of which the plaintiff is the *bona fide* holder. They were issued July 1, 1876, and contain this recital:

"This debt is authorized by an act of the legislative assembly of the territory of Colorado, approved the 10th day of January, 1868, and under the provisions of sections 52 and 53 of chapter 18, Revised Statutes of Colorado. In pursuance whereof, upon the 13th day of August, 1875, the commissioners of Rio Grande county, of said territory, submitted, upon written applica-

tion of one hundred voters of said county, to the electors thereof, in manner prescribed by law, the following proposition: 'Shall the county of Rio Grande, territory of Colorado, issue six thousand dollars of its coupon bonds, to be dated July 1, 1876, and bear interest at the rate of eight per cent. per annum; the interest payable annually at the office of the treasurer of the territory of Colorado, the principal payable in ten years after the 1st day of July, one thousand eight hundred and seventy-six; said bonds to be used by the county of Rio Grande in aid of the Del Norte & Summit-Wagon Toll-Road Company?'—which said proposition, upon the 14th day of September, 1875, at a special election held in said county, was decided in the affirmative by a majority of the electors of said county."

They were duly registered on August 8, 1876, and the certificate of of the territorial auditor affixed. The statutes of Colorado make such certificate evidence of the legal issue. If by that were meant conclusive evidence, nothing more need be said, for there is nothing on the face of the bonds to show a want of authority on the part of the county to issue, or a failure to comply with prescribed conditions. It may mean, however, only *prima facie* evidence; and yet, would not that be sufficient to uphold the bonds in the hands of a *bona fide* holder, as against any mere defect not apparent on their face? I do not care, however, to rest this case on either of these suggestions, for there has been a full showing of the facts attending their issue, and I am satisfied therefrom that they are both legally and equitably the valid obligations of the defendant. The statute authorized a subscription to the capital stock of an organized road company, and the payment of that subscription in bonds. The recital does not affirmatively show whether a subscription or a donation was made, or whether the recipient was an incorporated company or not; but the testimony puts the matter at rest. The company was incorporated, stock was subscribed, was issued to and received by the county; it took part in the corporate proceedings as a stockholder, fixed the rates of toll, offered some shares for sale, and, finally, took possession of the road.

The defense presented—at least the only one which requires notice—is that the bonds were issued to the wrong party, and thus the intention of the voters thwarted. In 1874 a company was formed, but not incorporated, known as the "Del Norte & Summit Wagon Road Company." The petition for an election, the election notice, and all proceedings connected with the election, spoke of a subscription to the capital stock of the Del Norte & Summit Wagon Road Company. This petition was filed with the county commissioners on July 23, 1875. Three days before, articles of incorporation of the Del Norte & Summit Road Company were signed. On the 23d, the day the petition was filed, they were acknowledged by the incorporators, and on July 27th they were filed in the office of the secretary of state, and the incorporation perfected. This was the only incorporated company in existence until some time after the issue of the bonds. On June 30, 1876, this company changed its name to the "Del Norte & Summit Wagon Toll-Road Company,"—the name found in the bonds. This declaration of change of name was filed in the office of the county clerk of the county, and also in the office of the sec-

retary of state.   On July 6, 1876, the county commissioners passed a resolution authorizing its president to subscribe to the capital stock of the Del Norte & Summit Wagon Toll-Road Company, "which said company," as the resolution reads, "was formerly known and designated as the 'Del Norte & Summit Road Company,' it being the same company for which bonds to the amount of six thousand dollars were voted in aid of, at the election held in said county on the 14th of September, 1875." The resolution also provides for a certain disposition of all the stock of the company, both that belonging to the county and that retained by the incorporators, which was to be placed in the hands of a trustee as guaranty for the completion of the road.   Thereafter, at the solicitation of the county officers and other citizens, a banker in the county purchased the bonds, and the proceeds were used in the construction of the road.   The county, as heretofore stated, voted on this stock, participated in the proceedings of this company, fixed the rates of toll, offered the shares for sale, and finally took possession of the road.   Further, it paid the interest on the bonds until they matured,—a period of 10 years.   Now, although the name used in the election proceedings was not technically correct, yet the whole conduct of affairs from the commencement to the close shows what company was intended, and that the right company received the bonds.   The identification is complete, and a mere misnomer in no manner affects the validity of the subscription or the bonds. *Moultrie* v. *Fairfield,* 105 U. S. 370; *Anderson Co.* v. *Beal,* 113 U. S. 227, 5 Sup. Ct. Rep. 433.   Legally, therefore, the county is bound to pay this debt; equitably, also, it is bound, for it secured that which a subscription was intended to secure,—the completed road; it received the stock promised for its subscription; and, finally, took possession of the road itself.   It recognized for 10 years the validity of the bonds by the payment of the annual interest, and only challenged their validity when the maturing of the debt made the necessary payment a burden.   Under those circumstances, the language of DRUMMOND, C. J., in *Bank* v. *Springfield,* 4 Fed. Rep. 276, is pertinent:

"But the equity of the holders of these bonds does seem so strong that no court, unless under a sort of moral or legal compulsion, would feel inclined to say, under all the circumstances of this case, that these bonds were invalid. Having been issued for so long a time, the interest on them having been paid, their validity having been recognized again and again in after years by the city authorities, it does seem as though it is too late now, under all the circumstances of this case, for the city to question their validity. I therefore hold that they are valid, and the city is liable. It has issued the bonds, obtained the money, and the benefits it has conferred; and law and equity declare that the debt shall be paid."

Pertinent, also, is the language of the apostle:

"Finally, brethren, * * * whatsoever things are honest, whatsoever things are just, * * * whatsoever things are of good report, if there be any virtue, and if there be any praise, think on these things."

The plaintiff is entitled to judgment.