(236 P.3d 535)
No. 100,055

HM OF TOPEKA, LLC, a/k/a HM OF KANSAS, LLC, A Kansas Limited Liability Company, *Appellant*, v. INDIAN COUNTRY MINI MART, A Kansas General Partnership, CARLA D. NISSEN, and ROGER ALDIS, *Appellees*.

Opinion filed July 30, 2010.

*Vernon L. Jarboe, Martha A. Peterson,* and *Stephen D. Lanterman,* of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for appellant.

*J. Phillip Gragson,* of Henson, Clark, Hutton, Mudrick & Gragson, LLP, of Topeka, for appellees.

Before STANDRIDGE, P.J., GREEN and MARQUARDT, JJ.

STANDRIDGE, J.: HM of Topeka, LLC, appeals from the district court's decision to dismiss its petition seeking specific performance of a contract to purchase a convenience store. For the reasons set forth below, we reverse the decision of the district court and remand for further proceedings.

## FACTS

Terry Hummer is the sole member of HM of Topeka, LLC, a Kansas limited liability company. Indian Country Mini Mart (Indian Country) is a convenience store organized as a Kansas general partnership and owned in equal shares by Roger Aldis and Carla Nissen.

Hummer had known Aldis for some time and first approached Aldis about purchasing Indian Country in July 2004. Hummer was unable to purchase Indian Country himself at the time, so he attempted to put together a transaction by which an unrelated entity, J & J Development, would purchase Indian Country and then lease the premises to Hummer Markets, another entity owned by Hummer. Although J & J Development signed a purchase agreement, the deal fell through prior to closing.

In March 2006, Hummer again approached Aldis about purchasing Indian Country. Aldis provided Hummer with a purchase agreement document, which still listed J & J Development as the purchaser. On the first page of the agreement, Hummer whited out "J & J Development" and handwrote "HM OF KANSAS LLC" (as opposed to HM of Topeka) in the space designated for the purchaser. On the final page of the purchasing agreement, Hummer removed J & J Development's signature block and representative's signature and handwrote "HM of KANSAS, LLC" (as opposed to HM of Topeka) under his signature. The purchase agreement was executed on March 20, 2006, by Nissen, in both

her individual capacity and on behalf of Indian County, and by Hummer on behalf of HM of Kansas.

Hummer later realized his apparent mistake in writing "HM of Kansas" (which is not a legal entity) rather than "HM of Topeka" on the purchase agreement. Accordingly, Hummer's attorney prepared an amended purchase agreement that corrected the error. Although other closing documents prepared by Hummer and Hummer's counsel correctly identified the purchaser as HM of Topeka rather than HM of Kansas, there is no evidence that Aldis or Nissen saw these other documents.

The purchase agreement provided that closing would take place within 45 days. That date, May 4, came and went. Believing that the purchaser was having trouble obtaining financing, Aldis testified that he considered the purchase agreement to have terminated on May 15, 2006. Hummer stated that the delay was due to title insurance issues and insisted that the deal should still close. A title insurance commitment was issued on May 22, 2006. HM of Topeka was listed as the proposed insured on a title insurance commitment issued for Indian Country.

The transaction never closed. On June 15, 2006, HM of Topeka filed suit against Indian Country seeking specific performance on the purchase agreement and damages for breach of contract.

In July 2006, Indian Country filed a motion to dismiss the petition arguing (1) HM of Topeka was a nonparty that did not have standing to enforce the purchase agreement and (2) HM of Kansas was not a legal entity that could sue to enforce the purchase agreement. In response, HM of Topeka asserted HM of Kansas was merely a misnomer for HM of Topeka and should have no impact on the enforceability of the purchase agreement. The district court held a hearing on the motion to dismiss but did not rule on the motion. The hearing transcript is not in the record on appeal.

The case proceeded through discovery and in October 2007, Indian Country filed a motion for summary judgment based on the same arguments presented in its motion to dismiss filed 15 months earlier. In November 2007, the district court held a hearing, the transcript of which is not in the record on appeal. On February 6, 2008, the district court granted Indian Country's motion to dismiss.

More specifically, the court held that because HM of Kansas was not a legal entity, it could not enforce the purchase agreement and that no other entity, ostensibly HM of Topeka, could bring an action on its behalf.

## STANDARD OF REVIEW

In granting Indian Country's motion to dismiss, the district court expressly relied on an exhibit attached to the memorandum filed in support of such motion. This exhibit is a document signed by the Kansas Secretary of State certifying that, as of July 6, 2006, HM of Kansas, LLC, had not registered to do business in Kansas as a foreign limited liability company and that a limited liability company by that name had not been incorporated in Kansas. Since the district court considered matters outside the pleadings, we treat the district court's decision as one granting summary judgment rather than a motion to dismiss. K.S.A. 60-212(b); see *Odette Family Ltd. Partnership v. Agco Finance*, 35 Kan. App. 2d 1, 5, 129 P.3d 95 (2005).

We review a district court's decision to grant or deny a motion for summary judgment as follows:

" ' " ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." ' " [Citations omitted.]' " *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009).

## ANALYSIS

The district court dismissed the lawsuit here because (1) HM of Kansas was not a legal entity that could bring a lawsuit; and (2) HM of Topeka was not an entity that could sue for breach of the underlying contract on behalf of HM of Kansas. We agree with the

district court's finding that HM of Kansas was not a legal entity that could bring a lawsuit. For the reasons stated below, however, we disagree with the district court's finding that HM of Topeka is not entitled to sue for breach of the underlying contract.

In order to demonstrate standing to sue, a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Harrison v. Long*, 241 Kan. 174, 176, 734 P.2d 1155 (1987). In other words, HM of Topeka must show it suffered some injury and that there was some causal connection between the claimed injury and the challenged conduct.

To that end, HM of Topeka maintains that the mistake in identifying "HM of Topeka" as "HM of Kansas" in the purchase agreement is a misnomer that did not have any material effect on enforceability of the purchase agreement; thus, Indian Country breached a valid contractual agreement to sell the convenience store to HM of Topeka (challenged conduct). HM of Topeka then argues that as a direct result of Indian Country's breach of contract, HM of Topeka was unjustly deprived from exercising its contractual right to purchase the convenience store (claimed injury).

The basic doctrine of misnomer and its supporting rationale are stated in 18A Am. Jur. 2d, Corporations § 238:

"The names of individuals and corporations differ in that the alteration of a letter or transposition of a word usually makes a person's name entirely different, while the name of a corporation frequently consists of several descriptive words and the transposition of them or an interpolation, omission, or alteration of some of them may make no essential difference in their sense. It is the general rule that, where there is a misnomer of a corporation in a grant, obligation, written contract, notice, or the like, if there is enough expressed to show that there is such an artificial being, and to distinguish it from all others, the corporate body is well named, even though there is a variation of words and syllables."

In his treatise on corporate law, William Meade Fletcher states that "the misnomer of a corporation generally will not be treated by the courts as material if the identity of the corporation is reasonably clear or can be ascertained by sufficient evidence." 6 Fletcher Cyclopedia of the Law of Private Corporations § 2444

(2005). According to Fletcher, the intent of the parties controls. Misnomer has been applied in various contexts and the same rules appear to apply whether the misnomer occurred in a contract, court filing, or some other document.

There are no cases in Kansas directly addressing whether a mistake in identifying the name of a contracting party renders the underlying contract unenforceable. We do, however, find the case of *King v. Wilson*, 86 Kan. 227, 120 Pac. 342 (1912), instructive on the issue. The dispute in *King* involved a publication notice that identified the name of the party to be put on notice as "The Farmers' Loan and Trust Co., a Corporation," when the company's true name was "The Farmers' Loan and Trust Company of Kansas." Farmers' Loan argued that the notice of suit was insufficient to confer jurisdiction because it was not made in its true corporate name. 86 Kan. at 229.

Relying on Kansas cases dealing with incorrect designation of individuals (as opposed to corporations) in notice of process, as well as a treatise on corporations and persuasive authority from other jurisdictions regarding misidentification of a corporation's legal name, the Kansas Supreme Court concluded as a matter of law that in those cases where the name assigned to a corporation in a legal notice fairly advises the intended corporation and others that a proceeding is pending, such notice is sufficient to withstand collateral attack. Applying the facts of the case to the rule of law, the court held any deviation in Farmers' Loan's name did not render notice of process insufficient because it did not appear that anyone was, or likely could have been, misled by the incorrect designation. 86 Kan. at 229-30.

Although the court's decision to apply the misnomer doctrine in *King* was based on misidentification of a corporation's legal name in a published notice of legal proceedings, we believe the rationale underlying that decision applies equally to the facts presented in this case. As a matter of law, then, and based on the rationale in *King* and the treatises and persuasive authority from other jurisdictions upon which the *King* case relied, we hold that misidentification of a contracting party's legal name in a contract does not, in and of itself, prohibit any party to that contract from enforcing

it as long as the entity's true identity is reasonably clear or can be ascertained by sufficient evidence and the other parties to the contract were not, or were not likely to have been, misled by the misidentification.

Applying our holding to the facts presented in this case, we note that there is no dispute between the parties that Hummer's attorney informed Aldis in March or April about the typographical mistake in identifying "HM of Topeka" as "HM of Kansas" in the purchase agreement. We further note that, notwithstanding knowledge of this typographical mistake, both Hummer and Indian Country continued to actively work towards closing the deal in April, May, and June 2006. To that end, the record reflects that during this time period Aldis did not have any reservations about the purchaser's exact identity, but instead was completely focused on whether the corporate entity making the purchase could obtain financing and complete the deal.

Consistent with the facts in the record, Indian Country has never argued it did not know HM of Topeka was the true purchaser and that it could not have readily determined that HM of Topeka was the true purchaser. Nor does Indian Country argue that it was, or likely could have been, misled by the typographical mistake in identifying "HM of Topeka" as "HM of Kansas" in the purchase agreement.

Based on the analysis above, we conclude that the mistake in identifying "HM of Topeka" as "HM of Kansas" in the purchase agreement is a misnomer that did not have any material effect on enforceability of the purchase agreement. Although only persuasive authority, we find it significant that the conclusion we reach today is identical to a case decided by a Missouri appellate court under similar facts. In *Blades v. Cinder Block Co.*, 10 S.W.2d 319 (Mo. App. 1928), an individual filed a personal injury suit naming the "Cinder Block Company of St. Louis" as defendant. 10 S.W.2d at 319. However, there was no "Cinder Block Company of St. Louis"; the actual name of the defendant was "Cinder Block Company of Kansas City, Mo."

After losing at trial, the defendant appealed on grounds that the court lacked jurisdiction over Cinder Block Company of Kansas

City, Mo., because the defendant had not been sued under its correct name. In affirming the verdict, the court first noted the general rules that a misnomer is immaterial when there is "no substantial mistake so as to indicate a different entity" and "if it appears that the corporation could not have been, or was not, misled [by]" the misnomer. 10 S.W.2d at 320. The court then noted that "the customary phrase, 'of a location,' is not to be considered as a part of the corporate name, but rather as descriptive of the situs of the corporation itself, so that the omission or addition of such phrase is generally to be regarded as immaterial." 10 S.W.2d at 320. The court then found that the mistake in naming the defendant was limited to the description of location and was therefore insubstantial in nature. The court also found that there was no risk of the defendant being misled because there was no other company that had the name to which the defendant was erroneously referred. 10 S.W.2d at 320.

Like *Blades*, the identification error in this case was limited to the geographical description of "HM" as HM of Topeka or HM of Kansas. Also like *Blades*, the mistake in naming the purchasing entity was limited to the description of the entity's location and there was no other company that had the name to which the purchaser was erroneously referred. Although not explicit, the *Blades* court implicitly recognized that under the facts presented, it would be inequitable to allow the defendant to avoid contractual liability simply because of a slight variance between the defendant's name on the contract and the defendant's "actual" corporate name. Indeed, the United States Supreme Court has observed that "a contract is not avoided by misnaming the corporation with which it is made." *County of Moultrie v. Fairfield*, 105 U.S. 370, 377, 26 L. Ed. 945 (1881).

As the court concluded in *Blades* based on the facts presented there, we conclude based on the facts presented here that the mistake in identifying "HM of Topeka" as "HM of Kansas" in the purchase agreement is a misnomer that did not have any material effect on enforceability of the purchase agreement. Given this conclusion and the fact that HM of Topeka has alleged in this lawsuit that Indian Country's failure to close on the purchase agreement

caused HM of Topeka to be unjustly deprived of its contractual right to purchase the convenience store, we find HM of Topeka is a legal entity with sufficient standing to sue Indian Country for specific performance of the underlying purchase agreement and damages for breach of the underlying contract.

Reversed and remanded.