NOT DESIGNATED FOR PUBLICATION

No. 117,103

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HM OF TOPEKA, LLC, a/k/a
HM OF KANSAS, LLC, a Kansas
Limited Liability Company,
*Appellee*,

v.

INDIAN COUNTRY MINI MART, a
Kansas General Partnership,
CARLA D. NISSEN, and ROGER ALDIS,
*Appellants*.

MEMORANDUM OPINION

Appeal from Jackson District Court; GARY L. NAFZIGER, judge. Opinion filed October 20, 2017. Reversed and remanded.

*J. Phillip Gragson* and *Amanda S. Vogelsberg*, of Henson, Hutton, Mudrick & Gragson, LLP, of Topeka, for appellants.

*Stephen P. Weir*, of Stephen P. Weir, P.A., of Topeka, for appellee.

Before POWELL, P.J., MALONE, J., and LORI A. BOLTON FLEMING, District Judge, assigned.

PER CURIAM:  In 2006, Indian Country Mini Mart (ICMM), a Kansas general partnership, and HM of Topeka, LLC, a/k/a HM of Kansas, LLC (HM) executed a written agreement for HM to purchase the Mini Mart building, its contents, and inventory located in Holton, Kansas. Roger Aldis and Carla Nissen were the general partners of ICMM when the contract was signed. Nissen operates the daily business and is the sole

owner of the land upon which the Mini Mart sits, and she owns the surrounding land which also contains her residence. Terry Hummer is the sole member of HM.

The sale never closed. HM sued ICMM, Nissen, and Aldis for specific performance of the purchase agreement and for contract damages. The defendants filed an answer and asserted an affirmative defense that the parties did not have a meeting of the minds sufficient to create an enforceable contract. At the pretrial conference hearing, the district court asked the parties to brief the issue of whether the written purchase agreement was ambiguous. The parties filed trial briefs, but neither party filed a motion for summary judgment and the parties' briefs made no attempt to comply with K.S.A. 2016 Supp. 60-256 or Supreme Court Rule 141 (2017 Kan. S. Ct. R. 204).

After hearing oral arguments from counsel, the district court sua sponte granted summary judgment in favor of HM for specific performance of the purchase agreement. ICMM and Nissen appeal from that ruling. For reasons we will endeavor to explain, the procedural issues in this appeal predominate the substantive issues. Based on the record presented in district court and on appeal, we are unable to find that there remains no genuine issue of material fact, especially on the disputed issue of contract formation, to establish that HM is entitled to judgment as a matter of law for specific performance of the contract. Thus, we reverse the district court's summary judgment in favor of HM for specific performance of the contract and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On March 20, 2006, ICMM and HM of Kansas, LLC executed a written agreement for the purchase of real estate and personal property commonly known as the Indian Country Mini Mart located in Holton, Kansas. Nissen signed the written agreement on behalf of the seller, and Hummer signed the agreement on behalf of the purchaser. The written agreement contained a legal description of the real estate which

2

was later determined to be inaccurate. The purchase price was $1,450,000, and the written agreement was contingent upon the purchaser obtaining financing to close the sale. The written agreement required the seller to convey marketable title by general warranty deed to be delivered to the purchaser at closing.

The written agreement specified that closing must occur within 45 days of execution, with possession to be delivered upon closing. The agreement also stated: "Time is of the essence in this Contract." Significantly, the written agreement contained no default clause. The agreement included no provision for the assessment of damages if either party was unwilling or unable to close within the time specified in the contract.

There were no direct contract negotiations between Nissen and Hummer before the written agreement was executed. Instead, Aldis acted as a go-between between the parties. Nissen later testified that at the time she signed the agreement, she did not understand whether she could add terms to the agreement. She did not have an attorney review the contract because she thought it was going to be part of a package of agreements which her attorney could review later. Nissen testified that she thought the original agreement was signed so that the purchaser could pursue financing, and she viewed the contract as simply "an avenue to get the ball rolling."

After the contract was signed, several problems were identified such as lagoon access and use, the need for an easement to Nissen's adjacent residence and use of the shared driveway, the incorrect legal description for the real property, the shared usage of water tanks and propane tanks on the property, the incorrect identity of the purchaser, and no timeframe for the seller to deliver marketable title. Hummer later testified that if the Mini Mart did not have its own water meter and could not get water, he would not have gone through with the transaction. He also admitted that if the land he was purchasing did not include the driveway, he would not have gone through with the transaction.

3

The May 4, 2006, closing deadline came and went. A title insurance commitment was finally issued on May 22, 2006. Aldis and Nissen believed that many problems still needed to be resolved before the sale could close, and Aldis had a conversation with Hummer about the situation on May 30, 2006. During that conversation, Hummer informed Aldis that "if you don't close tomorrow, I'll just have to sue you."

On June 15, 2006, HM of Topeka, LLC sued ICMM, Nissen, and Aldis for specific performance of the purchase agreement and for contract damages. The defendants filed an answer and asserted that "the contract lacked sufficient material terms such that there was no meeting of the minds with regard to said contract." The defendants filed a motion to dismiss, arguing that HM of Topeka, LLC lacked standing to file the lawsuit because the actual party to the purchase agreement was HM of Kansas, LLC, which was not a legal entity. The district court granted the motion to dismiss.

On appeal, this court ruled that "the mistake in identifying 'HM of Topeka' as 'HM of Kansas' in the purchase agreement is a misnomer that did not have any material effect on enforceability of the purchase agreement." *HM of Topeka, LLC v. Indian Country Mini Mart*, 44 Kan. App. 2d 297, 304, 236 P.3d 535 (2010), *rev. denied* 292 Kan. 964 (2011). This court concluded that "HM of Topeka is a legal entity with sufficient standing to sue Indian Country for specific performance of the underlying purchase agreement and damages for breach of the underlying contract." 44 Kan. App. 2d at 305.

On remand, the case remained pending in district court for several years. During that time, Aldis passed away. Also, in June 2014, the Kansas Department of Revenue filed two tax liens on the property totaling over $2,000,000.

The district court finally scheduled a pretrial conference for October 19, 2016. Both parties filed pretrial questionnaires identifying several questions of fact that needed to be resolved at trial, including "[w]hether the parties had a meeting of the minds as to

4

the essential terms of the contract." At the pretrial conference hearing, HM announced that it was electing the equitable remedy of specific performance instead of damages for breach of contract. After a lengthy discussion between counsel and the court, the judge inquired, "I'm just thinking here. Wouldn't it be logical, then, for [the parties] to brief the issue of ambiguity of the contract . . . and the Court can rule on that and then we'll know where we're going from there?" Counsel agreed to proceed with this course of action.

On October 28, 2016, counsel for HM filed a trial brief as directed by the district court. HM's trial brief did not include any itemized statement of facts that were keyed to the record. Counsel for ICMM and Nissen also filed a "pretrial brief" on October 28, 2016. The defendants attached deposition transcripts and numerous exhibits to their brief. However, neither party filed a motion for summary judgment and the parties' briefs made no attempt to comply with K.S.A. 2016 Supp. 60-256 or Supreme Court Rule 141.

The district court held a nonevidentiary hearing on October 31, 2016. After hearing arguments of counsel on the legal issue addressed in the briefs, the district court sua sponte granted summary judgment in favor of HM for specific performance of the contract. The district court's ruling from the bench in its entirety was as follows:

> "Well I read the contract several times. Obviously, this is a big purchase and a large operation because it entails gasoline, inventories, store inventories, vendor agreements, many things.
> "But the contract, within its four corners, sets forth the property, sets forth the business, sets forth what the price is going to be, provides for delivery of title, provides for how the inventory is to be transferred and payment made.
> "Therefore I, upon reviewing it, conclude, based upon the contract itself within the four corners of that contract, that there is no ambiguity. The Court finds that it is clear and unambiguous, that it should be, as a matter of law, enforced, and that, pursuant to their prayer, they've elected specific performance.
> "The plaintiff should be granted judgment for specific performance of the real estate contract."

5

Defense counsel immediately asked the district court to reconsider its ruling, arguing that even if the contract were deemed unambiguous, there were many factual disputes on the issue of contract formation that needed to be resolved by trial before specific performance of the contract could be ordered. The district court denied the request for reconsideration and directed HM's counsel to prepare a journal entry.

On December 5, 2016, the district court filed a "Journal Entry of Judgment-Specific Performance" drafted by HM's counsel. Although the journal entry contained 34 enumerated paragraphs, the order contained no "findings of fact" and consisted primarily of the district court's legal conclusions on the issues of contract ambiguity and specific performance. The journal entry stated that "the Court specifically hereby rules on the legal issues, as provided in Sup. Ct. Rule 140(c)(6) and (11) and finds the Contract is complete and unambiguous. Plaintiff is entitled to specific performance of the said Contract." In the journal entry, the district court acknowledged that HM still had a pending claim against the defendants for money damages caused by the delay in closing the contract. The district court found that "there is no just reason for delay" in the entry of judgment on specific performance so that an appeal could be taken pursuant to K.S.A. 2016 Supp. 60-254(b). ICMM and Nissen timely filed a notice of appeal.

ANALYSIS

On appeal, ICMM and Nissen (the defendants) raise six specific issues. The defendants first argue that the district court erred by entering summary judgment at the pretrial conference without the filing of a motion for summary judgment and without providing notice to the parties that the court intended to rule on the merits of the case. Second, the defendants argue that the district court erred when it summarily granted judgment on the issue of contract formation. Third, the defendants argue that even if this court finds there was a meeting of the minds sufficient to create an enforceable contract, the district court erred in finding that the purported agreement was not ambiguous.

6

Fourth, the defendants argue that the district court erred by considering parol evidence in determining whether the contract was ambiguous. Fifth, the defendants argue that the district court erred by ignoring whether the agreement violated the statute of frauds. Finally, the defendants argue that the district court erred by ordering specific performance on a real estate contract when facts and circumstances related to the marketability of title and ability to sell the property have changed subsequent to the making of the purported contract.

HM's brief does not individually address each of the issues the defendants raise on appeal. Instead, HM argues that "the one main underlying issue is whether the District Court erred in granting judgment for specific performance of the underlying contract." HM asserts that the defendants "raise every kind of argument they can to change the fact that a written contract was entered into, but the existence of that written contract is absolutely without question." HM concludes that the district court did not err in "holding the Defendants to their written agreement to sell real estate."

*Did the district court err when it sua sponte granted summary judgment in favor of HM?*

The most unusual aspect of the proceedings below is that the district court granted summary judgment in favor of HM for specific performance at the pretrial conference, even though neither party filed a motion for summary judgment and the parties' trial briefs made no attempt to comply with K.S.A. 2016 Supp. 60-256 or Supreme Court Rule 141. We will combine the defendants' first two issues on appeal and address whether the district court erred by entering summary judgment at the pretrial conference on the issue of contract formation without the filing of a motion for summary judgment and without providing notice to the parties that the court intended to rule on the merits of the case.

The defendants' appellate brief argues that the district court's judgment "should be reversed because it summarily granted summary judgment when there were disputed

facts presented by both parties on the issue of contract formation, specifically meeting of the minds and missing material terms." The defendants assert that the district court "disregarded Defendants' evidence in support of a lack of contract formation but believed Plaintiff's proffers of evidence at oral argument and in its pretrial brief despite no citation to the record." The defendants further argue that the district court "tried to get around this issue by 'relying on the four corners of the contract alone,' even though the issue of contract formation is not as simple and goes to the parties' intent."

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016).

The defendants argue that *Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 420 P.2d 1019 (1966), "illustrates the error of judgment entered summarily on the trial court's own motion during a pretrial conference." In *Green*, the plaintiff was a customer at the defendant's store and she fell down the outside step while leaving the store. The plaintiff asserted that the defendant was negligent in that the "outside step and landing area were defective, dangerous, unsafe and in disrepair." 197 Kan. at 789. At the pretrial conference, the district court considered the statement of plaintiff's counsel, plaintiff's discovery deposition, and various photographs of the scene of the accident which were offered by both parties. The district court concluded:  "'After having considered the pleadings and the deposition and the statements of counsel and the photographs, the

Court finds that summary judgment for the defendant should be sustained on the ground that reasonable minds could not differ on whether the threshold was properly or negligently maintained.'" 197 Kan. at 789.

On appeal, the Kansas Supreme Court reversed the judgment of the district court after examining the pretrial testimony and surmising that the district court discarded the testimony of the plaintiff that she fell due to the flooring and its condition. Our Supreme Court concluded that the "photographs should not be accepted as absolute and positive evidence in a negligence case without an opportunity for the opposing party to inquire as to whether they present with fair accuracy the place of the happening and the physical condition surrounding it at the time of the injury." 197 Kan. at 792.

We find the more recent case of *Montoy v. State,* 275 Kan. 145, 150, 62 P.3d 228 (2003), to be instructive. In *Montoy*, a school finance case, the district court ordered the parties to submit pretrial briefs to determine various legal issues, but the district court never informed the parties that the case was to be disposed of based on the briefs. Nonetheless, without making any findings of fact, the district court disposed of the entire case after the pretrial briefs were filed based upon the district court's conclusion that the plaintiffs' claims were legally insufficient.

On appeal, our Supreme Court treated the district court's dispositive order as a summary judgment order. As to the procedure followed in district court, our Supreme Court noted that "[h]ad the plaintiffs been informed by the court that it would consider their submission to determine the legal sufficiency of the plaintiffs' claims, rather than to determine what legal issues it would be faced with upon trial of the case, the plaintiffs may have approached their task differently." 275 Kan. at 151. After discussing *Green* and other appellate decisions, our Supreme Court reversed and remanded the case, concluding that there remained a genuine issue of material fact which did not support the summary disposition of the district court. 275 Kan. at 155-56. The *Montoy* court reasoned:

9

"When this court is called upon to review a trial court decision, we must acknowledge the wisdom of the Kansas Code of Civil Procedure in requiring that the controlling facts be set forth in a final judgment rendered by a district court. See K.S.A. 2001 Supp. 60-252; K.S.A. 2001 Supp. 60-256. Moreover, Supreme Court Rule 141, while only dealing with summary judgment, further emphasizes the necessity that such judgments be entered only where there remains no genuine issue of material fact and a party is entitled to judgment as a matter of law. In light of our decision, we may not ignore the plaintiffs' factual allegations. When we consider the record as a whole and apply the standard we are required to apply, we conclude that there remain in dispute genuine issues of material fact which do not support the summary disposition of the district court. We, therefore, reverse the judgment of the district court and remand for further proceedings." 275 Kan. at 155-56.

Here, the district court sua sponte granted summary judgment at the pretrial conference in favor of HM for specific performance of the contract and cited Supreme Court Rule 140(c)(6) and (11) as its authority for ruling on the legal issues presented in the case. There is no question that Supreme Court Rule 140(c)(6) and (11) (2017 Kan. S. Ct. R. 202) allows the district court to rule on legal issues presented at the pretrial conference, including motions in limine, motions for judgment on the pleadings, or summary judgment motions. We also agree that district courts have the inherent power to sua sponte grant summary judgment. See *Montoy*, 275 Kan. at 151; *Missouri Medical Ins. Co. v. Wong,* 234 Kan. 811, 816, 676 P.2d 113 (1984). However, to do so presents a high standard because the same conditions must exist as would justify granting a summary judgment motion filed by a party, i.e., resolving all facts and inferences which may be reasonably drawn from the evidence in favor of the party against whom a ruling is sought. See *Montoy*, 275 Kan. at 151 (citing *Green*, 197 Kan. at 790).

Turning to the substantive issue, the defendants argue that the district court erred when it summarily granted judgment on the issue of contract formation. Specifically, the defendants argue that the district court only looked to the four corners of the purported

agreement and failed to consider conflicting evidence that there was never a meeting of the minds between the parties sufficient to create an enforceable contract.

Whether a contract exists depends on the intentions of the parties and generally is a question of fact. *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2009). Our Supreme Court has consistently held that there must be a meeting of the minds on all essential terms in order to form a binding contract. *Albers v. Nelson*, 248 Kan. 575, 580, 809 P.2d 1194 (1991); see also *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 60, 643 P.2d 100 (1982); *Sidwell Oil & Gas Co. v. Loyd*, 230 Kan. 77, 84, 630 P.2d 1107 (1981); *Steele v. Harrison*, 220 Kan. 422, 428, 552 P.2d 957 (1976).

"The determination of the existence of a sufficient meeting of the minds to form the basis of a binding contract is one of fact to be determined by the trier of facts." *Care Display, Inc. v. Didde-Glaser, Inc.*, 225 Kan. 232, Syl. ¶ 3, 589 P.2d 599 (1979). "Courts generally should be cautious about granting summary judgment when the controlling issue turns on intent, and contract formation is no exception." *Rosen v. Hartstein*, No. 108,479, 2014 WL 278717, at *4 (Kan. App. 2014) (unpublished opinion) (citing *M West, Inc. v. Oak Park Mall, L.L.C.*, 44 Kan. App. 2d 35, 48, 234 P.3d 833 [2010]; *Ives v. McGannon*, 37 Kan. App. 2d 108, 116, 149 P.3d 880 [2007]).

Here, the defendants' counsel argued at the pretrial conference hearing that the district court first had to determine whether there was a meeting of the minds between the parties sufficient to create a valid contract and that whether the contract was ambiguous was a separate issue that the district court should address only after determining there was a contract. The defendants' counsel argued that whether there had been a sufficient meeting of the minds to form a valid contract presented a question of fact to be resolved at trial. The district court disagreed with defense counsel's analysis but provided little factual findings other than to note that the contract was signed by both parties.

11

In their pretrial brief, the defendants asserted that there was no "meeting of the minds" between ICMM, Nissen, and HM over details such as lagoon access and use and easement to the residence and use of the shared driveway between Nissen's residence and the Mini Mart, and there was an incorrect legal description for real property attached to the purported agreement. Further, there was no agreement on usage of diesel tanks, water tanks, or propane tanks, which were shared by Nissen's residence and the Mini Mart, some of which were located on real property owned by Nissen and not part of the purported sale of the Mini Mart. Finally, the purported agreement contained the incorrect identity of the purchaser and no timeframe for the seller to deliver marketable title.

The defendants' counsel argued at the pretrial conference hearing that even though Nissen and Hummer signed the purchase agreement, it was clear from Aldis', Nissen's, and Hummer's deposition testimony that the parties contemplated continued negotiation of essential terms. Aldis testified that he understood the purpose of the agreement was to allow Hummer to present something to the bank to see if he could get financing. Aldis testified that the agreement "didn't necessarily reflect" all of the operational aspects of the parties' deal. Aldis also testified that he and Hummer were aware of the lagoon issue but did not want to spend the money to iron out the agreements in writing if Hummer could not get a loan. Aldis testified that "we thought this was step number one. If we don't accomplish step number one there is not really a step number two."

Nissen did not negotiate the contract directly with Hummer, and her information about the proposed sale came solely from Aldis. Nissen testified that at the time she signed the contract, she did not understand whether she could add terms to the agreement. She did not have an attorney review the contract because she thought it was going to be part of a package of agreements which her attorney could review later. Nissen testified that she thought the original agreement was signed so that the purchaser could pursue financing, and she viewed the contract as simply "an avenue to get the ball rolling."

12

The defendants' pretrial brief also cited to Nissen's deposition testimony that the original agreement failed because it did not contain an easement to the residential property and it contained an incorrect legal description with a difference in acreage from 1.58 acres to 1.72 acres. Nissen testified that if she were to go through with the sale of the Mini Mart, items such as water, propane, diesel islands, gas pumps, storage tanks, and sewage would have to be part of the sale.

As stated in the defendants' pretrial brief, Hummer's deposition testimony revealed that he was aware that there was a lagoon adjacent to the Mini Mart that served both the Mini Mart and Nissen's residence. He also was aware that the lagoon was not located on the property he was purchasing, even though the agreement stated that the purchaser would have full access and right to the lagoon "located on the property." Hummer testified that he knew he would need an additional document such as an easement in order to facilitate closing the agreement and to obtain access to the lagoon.

As to whether these missing terms from the purchase agreement were material, the defendants' pretrial brief pointed to Hummer's own testimony that if the Mini Mart did not have its own water meter and could not get water, he would not have gone through with the transaction. He also admitted that if the land he was purchasing did not include the driveway, he would not have gone through with the transaction.

The defendants' pretrial brief argued that Hummer's actions after signing the purchase agreement further indicated that the agreement did not contain essential terms necessary to carry out the parties' intent. For instance, Hummer told his attorney that he wanted to purchase property to the east of the original legal description, as this property contained water access and access to storage tanks necessary to operate the Mini Mart. Hummer's attorney drew up an amended agreement, easement, and a bill of sale—all of which remained unsigned. The defendants argued that Hummer would not have hired attorneys to rewrite the agreement if he thought the original agreement was sufficient.

13

Finally, the defendants' pretrial brief pointed to a factual dispute between the parties concerning the final breakdown of efforts to complete the sale. Aldis and Nissen testified that they believed many problems still needed to be resolved before the sale could close, and Aldis had a conversation with Hummer about the situation on May 30, 2006. Hummer's version of the conversation was that Aldis called and simply told him that he and Nissen had changed their minds and decided not to close.

The district court attempted to address some of the defendants' arguments in the journal entry of judgment prepared by Hummer's counsel and filed several weeks after the pretrial conference hearing. First, the district court found that the defendants' argument that there was "no timeframe to deliver marketable title" was meritless. The district court pointed out that section 4 of the purchase agreement required the seller to "make available to Purchaser prior to closing of this Contract, as evidence of marketable title, a standard owner's preliminary title insurance report." The district court found that the defendants failed to provide HM with the preliminary title insurance report within a reasonable time after the contract was executed, so they could not complain that the contract did not close within 45 days for this reason.

Second, on the lagoon issue, the district court noted that section 2(e) of the purchase agreement stated: "The Purchaser shall have full access and right to the lagoons located on the property for as long as Purchaser owns the property in question." The district court acknowledged the defendants' argument that the lagoons were located on real property owned by Nissen, which was not part of the purported sale of the Mini Mart. However, the district court found that the defendants "have not provided any evidence of two different meanings as to those lagoons or that the parties' 'intent' was to include any other lagoons than the ones that actually exist and are being used by the mini mart being sold." The district court did not elaborate as to when the defendants were given the opportunity to provide any evidence on the lagoon issue other than the deposition testimony that was attached to the defendants' pretrial brief.

14

Third, as to the defendants' argument that negotiations were never agreed upon dealing with utilities to the properties—such as a residential easement, water service, propane service, telephone service, and lagoon service—the district court found that these were "nonessential terms" which did not "go to the very heart of the transaction." The district court concluded: "The Contract is appropriate to evidence a sale of real estate to be consummated in the future, and was devoted to that subject. It is unambiguous, and contains nothing to indicate the parties were dealing with other issues. The parties were not obliged to extend the writing further."

In the end, the district court's journal entry of judgment did not directly address all the factual disputes asserted by the defendants at the pretrial conference on the issue of contract formation. More importantly, the journal entry contained no controlling "findings of fact," and there were no findings at all that were keyed to the record. The lack of factual findings by the district court undermines its legal conclusion that many of the missing terms in the contract that prevented the sale from closing—which supported the defendants' argument that there was never a meeting of the minds sufficient to create an enforceable contract—were merely "nonessential terms" of the contract.

Supreme Court Rule 141 was adopted to facilitate a district court in granting summary judgment under K.S.A. 2016 Supp. 60-256. The rule requires that a motion for summary judgment must be accompanied by a filing of a memorandum or brief that states concisely, in separately numbered paragraphs, the uncontroverted contentions of fact on which the movant relies. See Rule 141(a)(1). The rule also requires that for each fact asserted by the moving party, the memorandum or brief must contain a precise reference to the record on which the movant relies. See Rule 141(a)(2). A memorandum or brief opposing a motion for summary judgment must state—in separately numbered paragraphs that correspond to the numbered paragraphs of movant's memorandum or brief—whether each of the movant's factual contentions is uncontroverted or controverted. See Rule 141(b). The purpose of Rule 141 is to allow the parties to

15

establish a clear and concise record whether the pleadings, discovery, and materials on file show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See K.S.A. 2016 Supp. 60-256(c).

In granting summary judgment in favor of HM for specific performance of the contract, the district court provided almost no factual findings other than to note that the contract was signed by both parties. The defendants proffered evidence at the pretrial conference hearing, including evidence of the conduct of the parties after the contract was signed, tending to establish disputed facts as to whether the parties had a meeting of the minds sufficient to create an enforceable contract, but it does not appear that the district court considered all the evidence in granting summary judgment in favor of HM for specific performance of the contract. More significantly, the evidence was not presented to the district court through the pretrial briefs in compliance with K.S.A. 2016 Supp. 60-256 and Supreme Court Rule 141 to enable the district court—and this court—to conclusively determine whether there were no genuine issues as to any material fact on the issue of contract formation. Perhaps HM can make a sufficient case in district court that it is entitled to judgment as a matter of law for specific performance of the contract, but we cannot determine from the record presented that such a case has been made.

Based on the record presented in district court and on appeal, we are unable to find that there remains no genuine issue of material fact, especially on the disputed issue of contract formation, to establish that HM is entitled to judgment as a matter of law for specific performance of the contract. Thus, we reverse the district court's summary judgment in favor of HM for specific performance of the contract, granted sua sponte at the pretrial conference, and remand for further proceedings. Based on this disposition, we do not need to reach the remaining issues the defendants have raised on appeal.

Reversed and remanded.

16